(959 P.2d 940)

No. 77,311

BENJAMIN E. MEEHAN, *Appellant*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellant*.

Opinion
filed May 29, 1998.

*Michael S. Holland*, of Russell, for the appellant.

*Brian Cox*, of Kansas Department of Revenue, for the appellee.

Before BRAZIL, C.J., PIERRON, J., and MERLIN G. WHEELER, District Judge, assigned.

PIERRON, J.: Benjamin E. Meehan appeals from a partial summary judgment ruling in favor of the Kansas Department of Revenue (KDR) regarding the suspension of his driver's license after a result of .08 on a breath test. We affirm.

Meehan's driver's license was suspended by the Kansas Department of Revenue (KDR) after he failed a breath test as provided in K.S.A. 1997 Supp. 8-1001. Meehan appealed. The district court granted partial summary judgment in favor of the KDR on evidentiary questions regarding the reliability of breath test procedures approved by the State and used by the police officer. Thereafter, the district court entered an order upholding the suspension of Meehan's driver's license for failing a breath test under K.S.A. 1997 Supp. 8-1002. The issue on appeal is whether the district court erred in granting partial summary judgment—*i.e.*, whether there was a genuine issue of material fact.

It should be emphasized that Meehan's primary arguments before the district court were that the breath test results were not reliable and, therefore, should not be *admitted* into evidence. Meehan also attempted to submit an expert's testimony at trial, apparently to argue that the district court should discredit or give little weight to the results because of questions of reliability. On appeal, Meehan continues to argue that the single test procedure approved by KDHE is not scientifically reliable. Again, the attack appears to focus more on the admissibility of the test results, not the weight the trier of fact should give to those results.

The starting point in the analysis is the language of the pertinent statutes. Kansas law states that "[a]ny person who operates or attempts to operate a vehicle within this state is deemed to have given consent . . . to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." K.S.A. 1997 Supp. 8-1001(a). The legislature gave the law enforcement officer the right to select which type of test is used, but requires the officer to advise the licensee of his or her right to refuse the test and the consequences which may arise if the test is not taken or refused. K.S.A. 1997 Supp. 8-1001(f)(1). The licensee also is advised he or she has the right to secure additional alcohol testing on his or her own. K.S.A. 1997 Supp. 8-1001(f)(1).

After a licensee fails an alcohol breath test (scoring an alcohol concentration of .08 or more) and the KDR is so advised, KDR serves a notice of suspension on the licensee. K.S.A. 1997 Supp. 8-1002(a)(2) and (c). If a timely request for a hearing is received from the licensee, a hearing is scheduled before KDR. The scope of the administrative hearing is set forth in K.S.A. 1997 Supp. 8-1002(h)(2). This statute limits the issues that can be raised in such a hearing. Those issues can include whether "(D) the testing equipment used was reliable; (E) the person who operated the testing equipment was qualified; (F) the testing procedures used were reliable; (G) the test result determined that the person had an alcohol concentration of .08 or greater in such person's blood or breath." K.S.A. 1997 Supp. 8-1002(h)(2).

In such hearings, or in de novo hearings before the district court, an affidavit from KDHE stating the equipment and officer were certified on the date the licensee was tested is admissible and "shall be admitted to prove such reliability without further foundation requirement." K.S.A. 1997 Supp. 8-1002(i). Moreover, a "certified operator of a breath testing device shall be competent to testify regarding the proper procedures to be used in conducting the test." K.S.A. 1997 Supp. 8-1002(i).

The legislature has delegated to the Kansas Department of Health and Environment (KDHE) the task of developing regulations establishing procedures, qualifications, and standards of performing testing of human breath for law enforcement purposes. K.S.A. 65-1,107(b). To that end, KDHE has adopted regulations which establish criteria to apply when approving devices for breath testing and the procedures to use when performing such tests. K.A.R. 28-32-1 *et seq.*

In interpreting these provisions, the Kansas appellate courts have repeatedly held that the legislature has expressly found that results from breath tests are sufficiently reliable to be admitted into evidence if the foundation establishes that the testing machine was operated according to the manufacturer's operational manual and any regulations set forth by KDHE and if the equipment and operator are certified. See *State v. Bishop,* 264 Kan. 717, 957 P.2d 369 (1998); *State v. Rohr,* 19 Kan. App. 2d 869, 870, 878 P.2d 221 (1994); *State v. Lieurance,* 14 Kan. App. 2d 87, 91, 782 P.2d 1246 (1989), *rev. denied* 246 Kan. 769 (1990).

According to this clear line of cases, the legislature has deemed alcohol breath tests admissible if the certification requirements are met and if the machine was operated in the manner provided by KDHE. A licensee can challenge, factually, whether the certifications were proper and whether the machine was operated in the manner required by the operations manual. Thus, a licensee can raise inconsistencies in the certification records or whether the testing officer actually followed all operational protocols. However, it is legislatively established that the results are admissible as a matter of law when the requisite foundation is laid under K.S.A. 1997 Supp. 8-1002(i). For these reasons, the district court correctly

concluded that under the statutes, Meehan's expert's testimony was irrelevant to determine the *admissibility* of the breathalyzer test results.

Moreover, the trial court concluded that the expert's testimony was irrelevant for *all* purposes because Kansas law permits the licensee to obtain an independent breath test and is advised of that right at the time the law enforcement officer gives the breath test. The expert conceded that if there was a meaningful opportunity to obtain the independent test, then his requirement of a two-test procedure would be satisfied. As a result, the trial court reaffirmed its prior ruling that the evidence was not relevant.

No Kansas cases have addressed the extent to which a person can challenge the reliability of the test because of inadequate procedures approved by KDHE. Assuming that KDHE's regulations and procedures statutorily preclude scientific challenges to the admissibility for properly supported breathalyzer results, the question becomes whether there is any constitutional basis to challenge these rules.

The legislature has the power to establish rules defining the admissibility of evidence in criminal, civil, and administrative proceedings. Those rules, however, must give way if constitutional rights would be impaired. *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973) (Mississippi evidentiary rules regulating impeachment and hearsay cannot impair criminal defendant's right to cross-examine witnesses and present witnesses in his defense.). See *State v. Brickhouse*, 20 Kan. App. 2d 495, 500-02, 890 P.2d 353, *rev. denied* 257 Kan. 1093 (1995) (hearsay rules and district court discretion cannot be applied unfairly to deprive criminal defendant of the right to present his defense).

Accordingly, the court must ascertain whether the statute and regulations establishing the reliability of breath testing in administrative revocation hearings are contrary to due process.

A person's entitlement to due process in driver's license suspension cases is well settled. In *Dixon v. Love*, 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723 (1977), the United States Supreme Court reviewed the constitutionality of an Illinois statute providing for

the suspension of a driver's license based upon official records establishing that the driver has been repeatedly convicted of serious traffic offenses. The *Dixon* court said:

" 'Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.' [*Bell v. Burson*, 402 U.S. 535, 539, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971)]." 431 U.S. at 112.

Once it is determined that due process applies to a specific governmental action, however, the court must still determine "what process is due to protect against an erroneous deprivation of that interest." *Mackey v. Montrym*, 443 U.S. 1, 10, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979). The procedural safeguards of the Due Process Clause are designed to prevent erroneous deprivation of important interests by the government. To achieve this end, however, the Due Process Clause does not require perfect procedures.

"[T]he Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error. The Due Process Clause simply does not mandate that all governmental decision-making comply with standards that assure perfect, error-free determinations. [Citation omitted.]" 443 U.S. at 13.

In determining "what process is due" in cases of driver's license revocations, courts have weighed the varying interests of the State and the licensee. See, *e.g.*, *State v. Heironimus*, 262 Kan. 796, 805-07, 941 P.2d 1356 (1997). In weighing these interests, the courts have concluded that due process does *not* require the State to conduct hearings prior to suspending a person's license because of repeated traffic violations, *Dixon*, 431 U.S. at 115, or for refusing to consent to a preliminary breath analysis test under implied consent laws, *Mackey*, 443 U.S. at 18-19.

The *Dixon* and *Mackey* decisions, however, have only dealt with the requirements of pre-revocation proceedings when state law establishes the right to post-revocation hearings. The United States Supreme Court does not appear to have addressed the question of whether due process requires that a licensee be given an unfettered right to present evidence in a suspension hearing.

The Kansas Supreme Court has recognized that due process entitles a licensee to certain rights to present evidence during a quasi-judicial revocation hearing. This includes the right to subpoena and cross-examine the arresting officer. *Wulfkuhle v. Kansas Dept. of Revenue*, 234 Kan. 241, 246-47, 671 P.2d 547 (1983). In addition, a factually detailed affidavit by the arresting officer is required by due process to support a revocation when the officer does not testify at the hearing. *Carson v. Division of Vehicles*, 237 Kan. 166, 174-76, 699 P.2d 447 (1985).

Our Supreme Court also, however, has recognized that the revocation hearing does not implicate the same weighty private interests that are implicated in criminal charges arising from DUI laws. *State v. Heironimus*, 262 Kan at 805. In *Heironimus*, the defendant challenged his criminal conviction for driving after being declared a habitual violator. Defendant argued that the administrative procedures revoking his license did not comport with due process and, therefore, his criminal conviction should be overturned. The Supreme Court declined to "increase the weight assigned to the private interest involved" because of the criminal repercussions if the licensee continued to drive. Rather, weighing of the governmental and private interests in the revocation process turned on the administrative nature of the proceedings. 262 Kan. at 805.

Breathalyzer equipment is recognized as being reliable and accurate by most jurisdictions and is sufficiently accurate for courts to take judicial notice of their results, even in criminal cases. See *State v. Downie*, 117 N.J. 450, 467-69, 569 A.2d 242, *cert. denied*, 498 U.S. 819 (1990) (prohibiting DUI defendants from challenging the reliability of breathalyzer results based upon testimony regarding scientific problems with partition ratio).

Courts have been willing to give deference to legislative determinations. Some courts have held that evidentiary rules establish that the legislature deems these breath tests are sufficiently accurate to reflect a person's blood alcohol concentration. Accordingly, these courts have prohibited a general challenge to the validity and reliability of legislatively or administratively approved breath tests. According to these courts, such concerns must be raised with the

legislature. *State v. Allen*, 104 Or. App. 622, 627, 802 P.2d 690 (1990), *rev. denied* 311 Or. 426 (1991).

Where scientific opinions conflict on a particular point, the legislature is free to adopt the opinion it chooses, and a court will not substitute its judgment on this issue. *State v. Brayman*, 110 Wash. 2d 183, 193-94, 751 P.2d 294 (1988). "Given the substantial support for acceptance of the scientific principles and the methods approved by the legislature in measuring blood-alcohol concentration, it cannot be said that the legislature's provisions are irrational" and, therefore, due process is not violated. *People v. Capporelli*, 148 Ill. App. 3d 1048, 1055, 502 N.E.2d 11 (1986), *rev. denied* 113 Ill. 2d 578 (1987). See *State v. Rucker*, 297 A.2d 400 (Del. 1972) (possible variation in test results cannot be presented to trier of fact; issue is limited to whether test was administered according to approved protocol); *State v. Garthe*, 145 N.J. 1, 13, 678 A.2d 153 (1996) (testing procedures adopted by administrative agency must be upheld absent evidence that the protocols are not scientifically reliable to establish that the breathalyzer machines are in proper operating order).

Many states have held that the State can enact DUI laws specifically designed to reduce or eliminate scientific disputes that could come up in DUI cases. Many of these cases deal with the admissibility of "partition ratio" evidence. The partition ratio is a means by which a breath test result is converted to a corresponding blood alcohol concentration. *State v. McManus*, 152 Wis. 2d 113, 121, 447 N.W.2d 654 (1989). The partition ratio defense was used frequently in states where the DUI laws only prohibited driving with a *blood* alcohol concentration over a specified limit. Thus, when a driver was accused, based upon a breathalyzer test, of driving with a blood alcohol concentration in excess of .10 percent, expert witnesses were used to attack the partition ratio in order to dispute that the breath test result actually established the driver's *blood* alcohol concentration exceeded the prohibited level.

As a result of the continuous litigation over breathalyzer testing, many states changed their DUI laws to prohibit driving with a blood alcohol concentration *or* a breath alcohol concentration in excess of specified standards. After these laws went into effect,

courts began holding partition ratio evidence irrelevant. This expert evidence was held not relevant under statutes which criminalized setting a breath alcohol concentration standard because it no longer mattered whether the driver also exceeded the prohibited blood alcohol level. See *State v. McManus*, 152 Wis. 2d at 123. See also *People v. Ireland*, 33 Cal. App. 4th 680, 690, 39 Cal. Rptr. 2d 870 (1995) (noting that statute was changed to specifically include breath alcohol concentrations in order to " '[e]liminate the need for conversion of a breath quantity to a blood concentration of alcohol,' " thereby rendering partition ratio evidence irrelevant); *People v. Bransford*, 8 Cal. 4th 885, 893, 35 Cal. Rptr. 2d 613, 884 P.2d 70 (1994), *cert. denied* 514 U.S. 1130 (1995) (same).

Denying a criminal defendant from presenting expert evidence to challenge the reliability of a breath test has been found in some cases not to deny the defendant of due process. Because of the State's strong interest in regulating driving and the clear evidence of havoc rendered by drunk drivers, the State has legitimate police power with laws designed to penalize and deter driving after consuming alcohol or drugs. As noted by the California Court of Appeals:

"The fact that the current state of scientific knowledge has not settled the ongoing scientific debate as to the best method of measuring inebriation does not preclude the Legislature from regulating driving based on conflicting scientific theories. It has been held that 'where scientific opinions conflict on a particular point, the Legislature is free to adopt the opinion it chooses, and the court will not substitute its judgment for that of the Legislature.' [Citation omitted.]" *People v. Ireland*, 33 Cal. App. 4th at 693.

Attacks on administrative agencies' established techniques or methods of performing chemical analysis also have been rejected. For example, in *State v. McManus*, the defendants challenged the State Department of Transportation's regulations approving the Intoxilyzer 5000 and its use. The Wisconsin Supreme Court held that the agency's regulations were within the authority granted to it by the legislature and that it was not established that the Intoxilyzer 5000 was unreliable. 152 Wis. 2d at 134, 138. Regulations may establish the evidentiary basis to establish blood alcohol concentration based upon breath test results.

Several states have approved breath testing procedures that do not require more than one test result. In *Commonwealth v. Neal*, 392 Mass. 1, 464 N.E.2d 1356 (1984), the defendant challenged the reliability of breath test results after being convicted of driving under the influence of alcohol. The defendant presented an expert who testified that, among other problems, the lack of a second test to confirm the initial breath test result made the result unreliable. While conceding that a two-test system would be a better practice, the Massachusetts Supreme Court noted that the statute did not require a second test for the results to be admissible. Moreover, the court found that the existing testing procedures, when combined with the statutory right to an independent test, provided sufficient safeguards to prevent erroneous criminal convictions. 392 Mass. at 22. See *Loxtercamp v. Commissioner of Public Safety*, 383 N.W.2d 335 (Minn. App. 1986) (rejecting challenges in administrative revocation hearing, including challenge that one test is unreliable; driver can attack administration of the test, but compliance with regulations creates prima facie proof of reliable test result).

It appears, however, that most states are using procedures that require two breath test results. See *California v. Trombetta*, 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984) (police's failure to preserve breath test sample not a denial of due process; California's two-test procedures discount likelihood that samples would prove exculpatory); *State v. White*, 253 N.J. Super. 490, 602 A.2d 295 (1991) (upholding conviction for failing to submit to a second breath test; state regulations required second breath test to verify first sample.) The two-test procedures have been adopted to establish the reliability of the operation of different kinds of breathalyzer machines. See *Romano v. Kimmelman*, 96 N.J. 66, 87, 474 A.2d 1 (1984) (two tests or other evidence of reliability required for admission of results from model 900A breathalyzer machine).

In *California v. Trombetta*, the United States Supreme Court seemed to imply that a driver's ability to obtain a timely independent test would be considered in determining whether alcohol-testing procedures comported with due process. The Supreme Court did not rely on the availability of independent testing in *Trombetta*,

however, because the record was not clear that the drivers were advised of their right to obtain independent testing. 467 U.S. at 490, n. 11. At least one state has held that due process does not require police to perform a second breath test to provide the driver a sample for his or her own testing. *State v. Shutt*, 116 N.H. 495, 496-97, 363 A.2d 406 (1976).

The court must turn to the due process balancing analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). The government clearly has an interest in developing reasonable means to remove potentially impaired drivers from its roadways and to deter all licensees from drinking and driving. A licensee, however, has a significant interest in keeping his or her driver's license in today's society. Thus, he or she has the right to contest the evidence relied upon by the State which forms the basis of any attempt to revoke his or her license.

The only evidence submitted by Meehan to challenge the test results relied upon by KDR in suspending his license was the deposition testimony of an expert chemist. Meehan's expert testified that with any chemical test a test result can only be considered reliable if it can be replicated. Therefore, if only one breath test was done, it would have no reliability because of the lack of verification. The expert agreed that the Intoxilyzer 5000 can generally provide accurate results of breath alcohol concentration within plus or minus .01 percent. However, the expert still contended more than one test had to be performed on a subject for the results to be considered reliable. Based upon his testing, 20 to 25 percent of the time, the Intoxilyzer 5000 given twice to the same subject yielded results which varied more than .01 percent. The second test is, in essence, confirmatory. The expert agreed that permitting a suspect the right to have an independent test of breath or blood operated within the two-test theory, although the expert did not believe, as a practical matter, such independent tests could be readily obtained.

According to Meehan, breath test results are not sufficiently reliable to carry out the State's interest in preventing drunk driving. The attack on the reliability of these tests is premised solely on the fact that the law enforcement officer did not test two samples of

Meehan's breath. Does the lack of a two-test procedure violate due process in an administrative proceeding? In other words, do the procedures adequately guard against erroneous deprivation of Meehan's license?

As noted above, the Due Process Clause does not require the use of "perfect" procedures or require procedures that are the most comprehensive possible. *Mackey*, 443 U.S. at 13. Under Kansas law and KDHE regulations, a certified police officer is required to use certified equipment to give the breath test. The equipment must be maintained according to KDHE standards. While plaintiff's expert testified that a two-test procedure was required to obtain scientifically reliable results, KDHE's regulations generally ensure that reliable results will be obtained. Any risk of error in the use of KDHE-approved equipment and procedures is minimized by state statute, which gives a licensee the absolute right to obtain an independent test. K.S.A. 8-1004. Drivers are required to be advised of their right to an independent test. K.S.A. 1997 Supp. 8-1001(f)(1). Moreover, Kansas courts have stringently enforced the licensee's rights to independent tests by excluding breath test results if a driver is not given an reasonable opportunity for an independent test upon his or her request. *State v. George*, 12 Kan. App. 2d 649, 754 P.2d 460 (1988). Based upon these procedures, Meehan's interest in not being deprived of his driver's license is adequately protected.

As the State points out, the key concept involved here is one that is as familiar to us as caveat emptor. Although Seneca the Younger is not present to put it in epigram form, the controlling principle is that driving is a privilege, not a right—*privilegium non jus.*

We believe Kansas has provided sufficient safeguards to appropriately protect this privilege. The test and procedures provided are reliable. Expert testimony which only purports to show that there may be marginally more accurate tests than that mandated by the applicable statutes and regulations is not properly admissible in this kind of administrative hearing either to prevent the admission of the test results at all, or to challenge the weight to be given them.

In this case, the evidence is such that, at least in an administrative proceeding, the State's reliance on a single breath test is not so inherently unreliable as to violate due process. Licensees are protected adequately from erroneous deprivation of their licenses by the reliability of the test and their ability to obtain an independent test under K.S.A. 8-1004. The expert opinion that a different test or protocol for the test would be *more* reliable is not relevant to the issues involved.

Affirmed.