895 So.2d 1131 (2005)
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Petitioner,
v.
Deborah M. PATRICK, Respondent.
No. 5D04-3127.
District Court of Appeal of Florida, Fifth District.
February 4, 2005.
Rehearing Denied March 17, 2005.
*1132 Enoch J. Whitney, General Counsel, and Rosena H. Finklea, Assistant General Counsel, Department of Highway Safety and Motor Vehicles, Tallahassee, for Petitioner.
David M. Robbins and Susan Z. Cohen of Epstein & Robbins, Jacksonville, for Respondent.
MONACO, J.
The Department of Highway Safety and Motor Vehicles ("DMV"), seeks certiorari review of a decision of the circuit court in its certiorari review capacity. As we conclude that the circuit court departed from the essential requirement of law, and that the ruling resulted in a miscarriage of justice, we grant the writ.
This case arises out of the administrative suspension of the driving privilege of the respondent, Deborah M. Patrick, as a result of the assertion of the DMV that she was driving while under the influence of alcohol. The facts leading to that suspension, as stated by the hearing officer, do not appear to be in dispute:
On November 29, 2003, at approximately 6:36 PM, Mr. Joe Ward, a chauffer [sic], was waiting with his vehicle in the O'Connell Center parking lot outside the University of Florida stadium. Mr. Ward observed a blond haired lady stagger to a van. The lady first went to the passenger side of the van, but then got into the drivers seat and proceeded to back over a table and other tailgate party items and bumped into two vehicles. While Mr. Ward watched, the woman got out of the van and looked at the two vehicles she had bumped into. She then got back into the van and again bumped into the vehicles. The woman then left the scene, driving toward the exit of the parking lot. Mr. Ward then waved down Patrolman Blunt, a University *1133 of Florida Campus Parking Patrolman, who called dispatch.
Officer P.R. Bell of the University of Florida Police Department quickly arrived on scene. After learning what had happened, Officer Bell put out a BOLO for the hit and run vehicle that included the tag number and description of the van. The van was spotted almost immediately by University of Florida Police Department Officer Gentry, who observed the van run a stop sign and drive the wrong way on a one-way street before he could successfully conduct a traffic stop.
Officer Gentry stated that he approached the van and tapped on the door. Officer Gentry observed that a female driver got out of the van and seemed disoriented stating, "I don't know where I am." When asked for her driver license, the woman began looking outside the van and attempted to open the gas cap. Officer Gentry also noted that the woman was swaying while standing. The driver was identified as Deborah M. Patrick. Officer Bell arrived on scene. After observing Ms. Patrick's slurred speech, bloodshot & watery eyes, dilated pupils, and strong odor of an alcoholic beverage on her breath, he requested that Ms. Patrick take field sobriety tests. Ms. Patrick refused to take the field sobriety tests and was arrested by Officer Bell for DUI. Officer Bell testified at the formal review that he also read Ms. Patrick the implied consent warning at that time.
Deborah M. Patrick was transported to the University of Florida Police Department where Lieutenant M. Welsh again read the implied consent warning. Ms. Patrick consented to a breath test that was administered by Lieutenant Welsh after a 20-minute observation period. Test results were 0.233 and 0.235 g/210L. [Apparently, no blood test was administered.] Deborah Patrick's driving privilege was suspended for driving with an unlawful breath alcohol level.
The hearing officer found that the arresting officer had probable cause to believe that Ms. Patrick was driving or had actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages or controlled substances; that she was lawfully arrested and charged with a violation of section 316.193, Florida Statutes (2003); and that she had an "unlawful alcohol level of .08 or higher." He concluded, therefore, that Ms. Patrick's driving privilege was properly suspended pursuant to the statute.
Ms. Patrick thereafter sought certiorari review of the suspension by the circuit court. While the circuit court did not disagree with the factual findings of the hearing officer, it rejected the hearing officer's central legal conclusion. The court indicated in its order that because the plain language of subparagraphs 322.2615(7)(a)1.-3. Florida Statutes (2003), contained no provision for formal review of suspensions based on breath-alcohol level, as opposed to blood-alcohol level, due process was offended. The court then remanded the case to the hearing officer to consider evidence of Ms. Patrick's blood-alcohol level. The DMV seeks review of this order.
We have jurisdiction. See § 35.043, Fla. Stat. (2003); Fla. R. App. P. 9.030(b)(2)(B); Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995). Our inquiry on this second-tier certiorari review, however, is limited to whether the circuit court afforded procedural due process, and whether the circuit court applied the correct law. See Haines City; Department of Highway Safety & Motor Vehicles v. Perry, 751 So.2d 1277, 1279 (Fla. *1134 5th DCA 2000); Conahan v. Department of Highway Safety & Motor Vehicles, 619 So.2d 988 (Fla. 5th DCA 1993).
The issue raised by this proceeding can best be understood by a review of the statutory framework for the suspension of driving privileges of those persons who drive when the level of alcohol in their systems exceeds certain thresholds. Paragraph 322.2615(1)(a), Florida Statutes (2003), provides that a law enforcement or correctional officer shall suspend the license of any person who has been arrested for violation of section 316.193, Florida Statutes (2003), a statute that regulates driving with an unlawful blood-alcohol or breath-alcohol level. A person who is driving or is in actual physical control of a vehicle in Florida can violate section 316.193, as it relates specifically to blood or breath-alcohol levels, in essentially two ways. First, under paragraph 316.193(1)(b) a person violates the law if he or she has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood. Alternatively, a person violates paragraph 316.193(1)(c) if he or she has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath. Thus, either test is an expression of the person's alcohol level.
Paragraph 322.2615(1)(b) is the problematic part of the statute. Sub-subparagraph (1)(b)1.b. provides for notice of the immediate driver's license suspension under paragraph (1)(a), and provides that the driver be informed of the following:
b. The driver violated s. 316.193 by driving with an unlawful blood-alcohol level as provided in that section and his or her driving privilege is suspended....
(Emphasis added). There is no similar notice provision for breath-alcohol level suspensions, although quite clearly in the present case Ms. Patrick was given that notice.
The next subsection, subsection 322.2615(2), requires the law enforcement officer to notify the DMV of the details of the suspension for violation of section 316.193, including the "results of any breath or blood test" that was administered. Subsection (3) then requires the DMV to notify any person whose driving privilege should have been suspended pursuant to subsection 322.2615(1), and who has not been so notified of the suspension by the law enforcement corrections officer. Therefore, despite the fact that the notification provisions of sub-subsection 322.2615(1)(b)1.b. do not specifically provide for notice to persons who failed the breath test, this section would appear to require the DMV to give the appropriate notice.
Subsections (4) and (5) of section 322.2615 provide for informal review of the suspension, while subsection (6) deals with formal review. Subsection (7) concerns, among other things, the issues to be addressed by the hearing officer in either a formal or informal hearing, and it is subsection (7) that gave the circuit court the most difficulty. Under subparagraph (a) of that subsection, which deals with suspensions for driving with an unlawful blood-alcohol level, the hearing officer's scope of review is limited to the following issues:
1. Whether the arresting officer had probable cause to believe that the person was driving or in actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages or controlled substances.
2. Whether the person was placed under lawful arrest....
3. Whether the person had an unlawful blood-alcohol level as provided in s. 316.193.
*1135 § 322.2615(7)(a)1.-3., Fla. Stat. (2003). There is no comparable specific reference to breath-alcohol suspensions. Subsection (11), however, provides that a formal hearing may be conducted upon review of the reports of the law enforcement or correctional officer, "including documents relating to the administration of a breath test or blood test or the refusal to take either test." It then gives the driver the right to subpoena the person "who administered or analyzed a breath or blood test."
When the trial court reviewed subparagraphs 322.2615(7)(a)1.-3. and recognized that there was no corresponding provision for breath-alcohol level, it concluded that the absence of such a provision "does not allow for a hearing officer to review... breath-alcohol suspensions," and that procedural due process was, therefore, violated. The circuit court then vacated Ms. Patrick's suspension, and remanded the case to the hearing officer to consider any evidence that she was driving on the day in question with an unlawful level of blood-alcohol. We disagree with this conclusion because we have determined that the circuit court failed to apply the correct law.
We begin with the proposition that the primary goal of statutory interpretation is to identify the purpose and intention of the legislature in creating the statute, in order to effectuate that intention. See Deason v. Fla. Dep't of Corr., 705 So.2d 1374 (Fla.1998). If a statute is unambiguous, then a court must give the language its plain meaning. See Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (Fla.1995). If, however, the language of the statute is in conflict, and thus ambiguous, we must resort to traditional rules of statutory construction to determine legislative intent. See Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1273 (Fla.2000).
It is evident from the internally conflicting subdivisions of section 322.2615, when read in pari materia with other sections of the statutes, that the formal review provision is ambiguous. The legislature made driving with either an excessive blood-alcohol or breath-alcohol level illegal in section 316.193; and gave law enforcement officers the power to suspend the driving privileges of drivers whose blood-alcohol or breath-alcohol exceeded the legislatively set limit in paragraph 322.2615(1)(a); and gave hearing officers the authority to consider the results of either breath tests or blood tests at a formal review in subsection 322.2615(11). The legislature, however, did not specifically provide the method for formal review of suspensions based on breath-alcohol tests in subsection 322.2615(7), although it did so with respect to blood-alcohol tests.
We do not think there is much question but that the legislature intended persons whose driving privileges are suspended because of a failed breath-alcohol test to have the same formal review rights as those who failed a blood-alcohol test. The only real issue is whether a court can supply the missing words that were apparently inadvertently omitted from the statute. We conclude that with respect to this statute, courts do have that power.
Courts ought to avoid an interpretation of a statute that would lead to an unreasonable, absurd or ridiculous result, provided the language of the statute is susceptible of an alternative interpretation. See State v. Atkinson, 831 So.2d 172 (Fla.2002); Haworth v. Chapman, 113 Fla. 591, 152 So. 663 (1933). Moreover, we are persuaded by the following language from Armstrong v. City of Edgewater, 157 So.2d 422, 425 (Fla.1963), that the reading into the statute of the missing language is in this instance appropriate:
Courts are, of course, extremely reluctant to add words to a statute as enacted *1136 by the Legislature. They should be extremely cautious in doing so. The recognized rule, however, is that when a word has obviously been omitted and the context of the act otherwise reflects the clear and unequivocal legislative intent, then this intent may be effectuated by supplying the word or words which have been inadvertently omitted. The courts cannot and should not undertake to supply words purposely omitted. When there is doubt as to the legislative intent or where speculation is necessary, then the doubts should be resolved against the power of the courts to supply missing words. On the other hand, when the addition of a word is necessary to prevent an act from being absurd and in order to conform the statute to the obvious intent of the Legislature, then words which were clearly omitted through some clerical or scrivener's misprision may be added by the court.
See also Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452 (Fla.1992); Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918).
This is not a circumstance where a description or definition of a crime is ambiguous and the rule of lenity might compel a ruling in favor of the defense. See, e.g., Jordan v. State, 801 So.2d 1032 (Fla. 5th DCA 2001). Rather, Ms. Patrick was made fully aware of the offense. The only concern is what procedures are to be followed in reviewing the administrative suspension of her driving privileges that grew out of her commission of the offense.
Moreover, although strict construction of penal statutes is generally proper, no statute should be construed so as to defeat the intention of the legislature. See Deason; State ex rel. Washington v. Rivkind, 350 So.2d 575, 577 (Fla. 3d DCA 1977). Given the obvious inadvertent failure to include suspensions based on breath-alcohol results in the formal review proceedings, we have little hesitancy in reading the statute to include the omitted language, as we believe the legislature clearly intended. Thus, we read paragraph 322.2615(7)(a) to include formal review for suspensions based on breath-alcohol, as well as blood-alcohol level violations of section 316.193. As we have concluded that the trial court did not apply the correct law, certiorari relief is appropriate.
WRIT OF CERTIORARI ISSUED. The order of the lower tribunal granting certiorari relief is quashed, and this case is remanded for further action consistent with this opinion.
SAWAYA, C.J., and THOMPSON, J., concur.