Rick MORRIS, Appellant,

v.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, DIVISION OF MOTOR VEHICLES, Appellee.

No. S–12279.

Supreme Court of Alaska.

July 3, 2008.

Peter F. Mysing, Kenai, for Appellant.

Margaret Paton Walsh, Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I.  INTRODUCTION

Rick Morris appeals the revocation of his driver's license following his arrest for driving under the influence. Morris claims that his chemical breath test—which showed a breath alcohol concentration of .089 percent—was unreliable and inaccurate and can not serve as a basis for revocation of his license because a later-administered independent blood test produced a result of .070 percent. Morris argues that, because the variance between the two test results is sufficiently large, the blood test failed to verify the breath test and the breath test is therefore invalid. Because we conclude that the hearing officer's finding—that it was more likely than not that Morris produced a chemical breath test of .08 percent or above—is supported by substantial evidence, we affirm the department's revocation.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

At 3:58 a.m. on June 20, 2004, Soldotna Police Officer Jessie Stoneking was driving north on the Sterling Highway when she saw a 2001 Jeep Wrangler leave the driveway of the Riverside House, a bar/lounge in Soldotna, and make a "wide sweeping right turn" into the left northbound highway lane without using a turn signal. Officer Stoneking pulled the vehicle over and approached the driver. The driver was identified as Rick Morris.

Officer Stoneking noted that Morris had red and glassy eyes, slurred speech, and a flushed face. Morris informed Officer Stoneking that he had consumed a beer at home prior to going to the Riverside House, and that he had drunk two rum-and-cokes while at the bar. Officer Stoneking required Morris to perform a number of field sobriety tests, which she found he executed poorly.

Morris then submitted to a preliminary breath test, which indicated that he had a breath alcohol content of .092 percent. Stoneking arrested Morris for driving under the influence (DUI) under AS 28.35.030 and transported him to the Alaska State Trooper station.

At 4:36 a.m., following a fifteen-minute observation period, Morris submitted a breath test sample on a Datamaster breath test instrument. The test reflected a result of .089 percent. Morris then exercised his right to an independent test and was transported to the Central Peninsula General Hospital for blood work. At 5:13 a.m., thirty-seven minutes after the chemical breath test, blood was drawn by a laboratory technician and placed into evidence storage at the Soldotna Police Department. Morris's blood sample was tested on August 11, 2004, by Providence Alaska Medical Center, and reflected a result of .0701 percent blood alcohol content.[1]

### B.  Proceedings

Morris was notified by the Department of Administration, Division of Motor Vehicles that it intended to revoke his driver's license based on a chemical breath test revealing an alcohol concentration of .08 percent or more.[2] Morris requested administrative review of the department's decision, and an administrative hearing was conducted before Hearing Officer Becky Janik in December 2004 and early January 2005.[3] Morris argued that the results of his blood test, performed thirty-seven minutes after his breath test, varied so greatly from the breath test result that it fell "outside the generally acceptable range" of natural alcohol elimination from the body and therefore failed to corroborate his breath test result. He asserted that the blood test result proved that the chemical breath test, which the department had relied upon to revoke his driver's license, was therefore inaccurate and that his license could not be suspended.

---

1. Evidence offered by Morris reflected two tests on the blood sample, the first producing a result of .070 percent and the second of .068 percent.

2. AS 28.15.165 provides for administrative revocation of a driver's license.

3. AS 28.15.166 provides for administrative review of the department's revocation.

In January 2005 the hearing officer affirmed the department's revocation. She determined that the Datamaster breath test instrument was working properly and that Morris's chemical breath test result was valid. She found that the evidence established that Morris was impaired on the morning in question and affirmed the department's revocation of Morris's driving privileges "for breath alcohol concentration of .08 or more."

Morris appealed to the superior court. On March 10, 2005, Superior Court Judge Harold M. Brown affirmed the hearing officer's decision.[4] Morris appeals.

## III. STANDARD OF REVIEW

■ We review driver's license revocation hearings under AS 28.15.166(m), which provides that the court "may reverse the department's determination if the court finds that the department misinterpreted the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence in the record."[5] Where, as here, the superior court was acting as an intermediate court of appeal, we will independently review the hearing officer's determination.[6]

■ We review issues of law not involving agency expertise under the substitution of judgment standard[7] and the hearing officer's factual findings under the substantial evidence test, "determining 'whether the findings are supported by such evidence as a reasonable mind might accept as adequate to support a conclusion.'"[8] When an agency "chooses between conflicting determinations and there is substantial evidence in the record to support either conclusion" we will affirm the agency's findings.[9]

## IV. DISCUSSION

We have repeatedly recognized that "[a] driver's license is an important property interest" which entitles a driver to a "meaningful hearing" before the driver's license can be suspended.[10] In order to affirm an administrative license revocation, a hearing officer must find by a preponderance of the evidence that a chemical test "produced a result described in AS 28.35.030(a)(2)."[11] Alaska Statute 28.35.030(a)(2) provides that a person commits the offense of driving while under the influence if the person operates a vehicle "and if, as determined by a chemical test taken within four hours after the alleged operating or driving, there is 0.08 percent or more by weight of alcohol in the person's blood ... or if there is 0.08 grams or more of alcohol per 210 liters of the person's breath." In this case, we must determine whether substantial evidence supports the hearing officer's decision that a chemical test produced a result of .08 percent or more alcohol in Morris's breath or blood. We are asked to consider whether the variance between a presumptively accurate breath test and a subsequent blood test that falls outside the average rates of alcohol elimination from the body proves that the former is unreliable for the purpose of revoking Morris's driver's license. Under the facts of the case presented here, we answer in the negative.

### A. Morris's License Revocation

■ Alaska Statute 28.35.033(d) provides that where "a chemical analysis of breath or blood was performed according to approved methods by a person trained according to techniques, methods, and standards of training approved by the Department of Public Safety, there is a presumption that the test

---

4. In June 2005 Judge Brown granted Morris's motion for stay of the license revocation during the pendency of this appeal.

5. *Saltz v. State, Dep't of Pub. Safety*, 942 P.2d 1151,1152 (Alaska 1997) (holding that supreme court applies same standard as superior court).

6. *State, Dep't of Pub. Safety v. Shakespeare*, 4 P.3d 322, 324 (Alaska 2000).

7. *Snyder v. State, Dep't of Pub. Safety*, 31 P.3d 770, 774 (Alaska 2001).

8. *Saltz v. State, Dep't of Admin., Div. of Motor Vehicles*, 126 P.3d 133, 136 (Alaska 2005). (quoting *Borrego v. State, Dep't of Pub. Safety*, 815 P.2d 360, 363 (Alaska 1991)).

9. *Anderson v. State, Dep't of Revenue*, 26 P.3d 1106, 1109 (Alaska 2001).

10. *Champion v. Dep't of Pub. Safety*, 721 P.2d 131, 133 (Alaska 1986).

11. AS 28.15.166(g) and (j).

results are valid and further foundation for introduction of the evidence is unnecessary." But while AS 28.35.033 creates a presumption of the chemical test's validity, "it does not make those [test] results unassailable." [12] We have said that the breath test is of "central importance" in a revocation proceeding, and we have repeatedly recognized that a defendant's right to test the reliability and accuracy of the test is "critical to his ability to present his case." [13] A driver has the right to challenge the accuracy of a breath alcohol test, which includes the right to obtain evidence of an independent blood test producing an exculpatory result.[14] Indeed, "[b]reathalyzer test results, like any other evidence, may be subject to attack and disproof." [15]

Morris asserts that the hearing officer erred in relying upon his .089 percent breath test result because he claims that the .070 percent blood test result proved that the former was unreliable.[16] Looking to the variance between the test results, he asserts that that there was no substantial evidentiary basis for the hearing officer's decision to affirm the department's revocation. The department counters that substantial evidence supports the hearing officer's determination that the breath test result was valid, that the blood test result does not prove that the Datamaster breath test was unreliable or inaccurate, and that Morris's blood test actually supports the hearing officer's finding that Morris's blood alcohol content was over the legal limit.

Evidence introduced at the revocation hearing revealed the following. Officer Stoneking conducted a preliminary breath test on Morris at approximately 3:58 a.m., which

reflected a breath alcohol content of .092 percent. Morris's chemical breath test, which produced a result of .089 percent, was conducted at 4:36 a.m., thirty-eight minutes later. The "Verification of Calibration Report" for the Datamaster breath test instrument reflected that the machine was certified for use and functioning properly. The Datamaster's internal self-tests were performed both before and after Morris's test. The hearing officer also reviewed the department's "Breath Alcohol Supervisor Manual" discussing metabolic process and the rates at which alcohol is eliminated from the body. The manual reflected reported rates ranging from, on average, .012 to .024g/210L per hour breath units, with an average elimination rate of .018 per hour. The manual also noted "[h]igher rates of metabolism have been reported and are usually associated with chronic consumption of large quantities of ethanol."

Morris testified at the hearing, and his testimony confirmed many of the preliminary facts noted in Officer Stoneking's police report. He explained that he made an improper turn in his vehicle on the morning in question because he drives a dump truck for a living and is accustomed to making wider turns in order to avoid the curb. He confirmed that he requested and obtained an independent blood test and that the result of the test was .070 percent. He also provided a letter from a chemist at Providence Hospital, Dr. Eileen Nickoloff, which stated that the "generally accepted average elimination is 0.018% per hour, with a range of .010 to .023%," that the interval between Morris's chemical breath test and blood test was thirty-seven minutes, and that this normalized to

---

**12.** *Keel v. State,* 609 P.2d 555, 557 (Alaska 1980) (construing former version of AS 28.35.033(d)).

**13.** *Champion,* 721 P.2d at 133.

**14.** *See Barcott v. State, Dep't of Pub. Safety,* 741 P.2d 226, 229 (Alaska 1987).

**15.** *Cooley v. Municipality of Anchorage,* 649 P.2d 251, 254–55 (Alaska App.1982).

**16.** In his reply brief, Morris contends that the State mischaracterizes the issue of the validity of the breath test as a finding of fact rather than a

conclusion of law. Morris raises this argument for the first time in his reply brief. Indeed, Morris himself initially suggested that the hearing officer's determination was a finding of fact: "[T]here was substantial evidence presented ... that the breath test ... was not reliable and it should not have been used as a basis to revoke his driving privileges." Because arguments raised for the first time in a reply brief will not be considered, we decline to address Morris's argument here. *See Sumner v. Eagle Nest Hotel,* 894 P.2d 628, 632 (Alaska 1995).

an average decline of .031 percent,[17] which was "outside the normally acceptable range for elimination."

At the hearing, Morris did not challenge the type of chemical breath test device utilized [18] or the certification or qualifications of the individual administering the test,[19] nor did he argue that the testing instrument had not been properly calibrated and verified as required under state law.[20] Other than the results of his blood test and a letter from the hospital chemist, he provided no evidence calling into question the reliability or validity of his chemical breath test result.[21] The hearing officer determined that the breath test instrument was working properly and that the evidence confirmed the validity of Morris's chemical breath test result.

### B. Substantial Evidence Supports the Hearing Officer's Decision To Revoke Morris's Driver's License.

■ Where a hearing officer administratively suspends a driver's license, we review the record to determine whether the hearing officer's decision is supported by substantial evidence. In this case, the hearing officer's decision was supported by the results of the breath test, by unchallenged evidence that the breath test machine was properly certified for use and was functioning properly, by evidence that the machine's internal self-tests were performed both before and after Morris's test, and by the fact that the blood test result supports the conclusion that Morris exceeded the legal limit at the time of his breath test. In addition, Morris's admission that he had been consuming alcohol, the evidence of his poor driving, and Officer Stoneking's testimony as to his personal condition

and his performance of field sobriety tests all supported the hearing officer's decision. Finally, AS 28.35.033(d) creates a presumption that where a chemical breath test "was performed according to approved methods by a person trained according to techniques, methods, and standards of training approved by the Department of Public Safety," the test is valid. In these circumstances, there was substantial evidence that supported the hearing officer's decision.

Morris contends that, in order to harmonize the variance between the blood and breath test, Morris must have had a rate of alcohol elimination of .031 percent per hour. Because this rate is significantly above average, Morris argues that the variance reveals that the breath test result was unreliable and invalid per se. But this argument assumes two propositions that lack factual or legal support. We consider each in turn.

Morris first assumes that only one chemical test—the state's breath test showing .089 percent at 4:36 a.m., or Morris's blood test showing .070 percent at 5:13 a.m.—can be right. But the tests are not necessarily inconsistent. Both tests could have been accurate if Morris had in fact eliminated alcohol at a high rate. While the average person eliminates alcohol at a rate of .012 to .024 percent per hour, the hearing officer had before her the department's "Breath Alcohol Supervisor Manual," which noted that "higher rates of metabolism have been reported and are usually associated with chronic consumption of large quantities." Indeed, even Morris's clinical chemist was unwilling to say that it was impossible for both tests to be accurate, only that he would have had to

---

17. The letter from Dr. Nickoloff actually refers to "an average decline of 0.31% over a one hour period." The superior court's order affirming the hearing officer's decision adopts this ".31%" figure, as does the appellant. The appellee notes that Dr. Nickoloff's letter likely contains a decimal place error and accordingly assumes that the actual figure is .031 percent. We find the appellee's reasoning persuasive and adopt the .031 percent figure.

18. *See* 13 Alaska Administrative Code (AAC) 63.020 (requiring scientific director of the breath and blood alcohol testing program to approve breath test instrument).

19. *See* 13 AAC 63.050 (requiring operators of breath test instruments be certified).

20. *See* 13 AAC 63.100 (requiring testing instruments be correctly calibrated and verified).

21. *See Keel v. State*, 609 P.2d 555, 557 (Alaska 1980) (noting that presumption of validity of test results means if regulations followed, there is sufficient evidence to admit test results into evidence, but weight given evidence is a factual matter for jury).

have eliminated alcohol at an "unexpectedly" high rate.[22]

In sum, the evidence at Morris's hearing established that the chemical breath test was presumptively valid, and Morris did not directly challenge the testing machine or process in any way. His only evidence was not necessarily inconsistent with the state's evidence. There was substantial evidence to support the hearing officer's conclusion that Morris's chemical breath test produced a result described under AS 28.35.030(a)(2): a breath alcohol content at or above .080 percent.

Morris's second assumption is implied; it is that, if a breath test and a blood test yield inconsistent results,[23] the breath test must be mistaken because the blood test is the superior method of testing. Before 1980, such a position might have found some support, for Alaska law defined intoxication only in terms of the percent of alcohol found in a driver's blood.[24] But in 1980 the legislature changed the definition of intoxication to include the percent of alcohol found in a driver's breath.[25] It is worth a moment to track the development of drunk driving laws in our state and the effect of this change on Morris's case now.

Historically Alaska, as well as many other states, defined the offense of driving while intoxicated as operating a vehicle with a blood alcohol concentration above a certain limit.[26] Under these schemes, an individual's blood alcohol concentration could be measured in a number of ways, but where a breath test was used "it was necessary to convert the breath alcohol concentration to a blood alcohol concentration by utilizing a partition ratio in order to determine whether the person had violated the particular [DUI] statute." [27] When blood alcohol content was

22. Morris also relies on *Best v. Municipality of Anchorage*, 712 P.2d 892 (Alaska App.1985), for the proposition that the variance in his test results is sufficiently large to refute the breath test's validity. *Best* is inapposite and offers no assistance to Morris because it involved a completely different situation: the attempt to check a first breath test by preserving a second breath sample in a perchlorate tube for later testing. There, checking of the initial breath results was impossible because of "improper collection technique utilized by insufficiently trained officers [using] inadequately designed and maintained adapters used for the perchlorate tube collection process." *Id.* at 902. Thus, the "variances" in *Best* were all between breath samples that were collected at the same time. Moreover, *Best* involved a situation where the defendant had "sustained his burden of showing [ ] that he was not furnished a reasonable means of verification," *id.* at 897 (quoting *State v. Kerr*, 712 P.2d 400, 406 (Alaska App.1985)), whereas Morris of course does not even assert that he was ever denied an opportunity to independently verify his breath test.

23. As we saw in the immediately preceding discussion, the results in this case are not necessarily inconsistent.

24. Former AS 28.35.033(a) (1978) provided in relevant part:

[T]he amount of alcohol *in the person's blood* at the time alleged, as shown by chemical analysis of the person's breath, shall give rise to the following presumptions:
. . . .
(3) If there was 0.10 per cent or more by weight of alcohol *in the person's blood,* it shall

be presumed that the person was under the influence of intoxicating liquor.
(Emphasis added.)

25. In 1980 the legislature amended AS 28.35.033(a) to provide that intoxication would depend on "the amount of alcohol in the person's blood or breath." *See also* Bill Analysis, Department of Public Safety, HB 833, March 6, 1980 (noting program effects of bill included that "[b]reath analysis would be added to blood analysis as a method of determining intoxication"). AS 28.35.033(a)(3) currently provides in relevant part: "If there was 0.08 percent or more by weight of alcohol in the person's blood ... or 0.08 grams or more of alcohol per 210 liters of the person's breath, it shall be presumed that the person was under the influence of an alcoholic beverage."

26. *See Simpson v. Municipality of Anchorage*, 635 P.2d 1197, 1200–01 (Alaska App.1981) (discussing statutory presumption of intoxication under former AS 28.35.033(a) that provided upon proceeding arising out of acts committed by person operating vehicle under the influence "the amount of alcohol *in the person's blood* at the time alleged, as shown by chemical analysis of the person's breath, shall give rise to the following presumptions ...." (emphasis added)); *see also State v. Hardesty*, 136 Idaho 707, 39 P.3d 647, 648–49 (App.2002) (internal citations omitted).

27. *Hardesty*, 39 P.3d at 648–49. The partition ratio is generally 2100:1, indicating for every molecule of alcohol in the breath there is considered to be 2100 molecules of alcohol in the

the standard defining the offense, defendants could raise the "partition ratio" defense, arguing that a given individual's actual ratio was different from the statutorily-presumed ratio of 2100:1. This defense was available where DUI laws defined the offense based upon a prohibited blood alcohol concentration and the defendant was accused of DUI based upon the results of a breathalyzer test. Many states, including Alaska, reacted to the use of the partition ratio defense by amending their laws to prohibit driving with either a blood *or* breath alcohol concentration in excess of specific standards.[28]

In a 1979 case, *Cooley v. Municipality of Anchorage*,[29] the court of appeals noted that the Anchorage DUI ordinance had been recently amended to define the intoxication level in terms of alcohol concentrations in both blood *and* breath.[30] Responding to appellant's argument that the breathalyzer test result may have inaccurately converted breath alcohol concentration into blood alcohol concentration under the partition ratio, the court concluded that "[a]s a practical matter, this source of possible inaccuracy may no longer arise under the municipal ordinance" because the amendment had expanded a determination of intoxication to include intoxication based upon breath alcohol concentration.[31]

The 1980 amendments to Alaska's DUI statutory scheme that added breath alcohol concentration to blood alcohol concentration as a means of determining intoxication[32] thus ended any presumption that a blood test is entitled to preference or priority over a breath test in determining intoxication. The offense is committed when either the blood alcohol level *or* the breath alcohol level is at or above .08 percent.

We have seen that Alaska's statutes defining drunk driving do not give priority or greater weight to a blood test over a breath test. How, then, should a hearing officer resolve conflicts between two tests? We have held that arguments challenging the reliability or validity of a particular test generally go to its weight, rather than its admissibility.[33] Thus, the weight given to the breath test is a factual matter properly left to the hearing officer.[34] The plain language of AS 28.15.166(g) provides that it is within the hearing officer's province to determine whether the chemical test produces a proscribed result.

Finally, the hearing officer's determination that Morris's test results exceeded the legal limit finds support in the breath test result. While Morris's blood test result can be completely harmonized with his breath test result only by assuming that he eliminated alcohol at an unusually high rate, the blood test in fact supports the hearing officer's finding—that Morris's test results were at .08 percent or above—assuming only an average rate of elimination. Recall that in order to revoke a driver's license, AS

blood. *Id.* at 649. The partition ratio varies from individual to individual. *Id.* at 649 n. 1; *see also Haynes v. State, Dep't of Pub. Safety*, 865 P.2d 753, 757 n. 1 (Alaska 1993) (Matthews, J., dissenting).

28. *Hardesty*, 39 P.3d at 648–49. *See also Meehan v. Kansas Dep't of Revenue*, 25 Kan.App.2d 183, 959 P.2d 940, 944–45 (1998); *Dep't of Highway Safety & Motor Vehicles v. Patrick*, 895 So.2d 1131, 1134 (Fla.Dist.App.2005) (noting either blood alcohol or breath-alcohol test result is "expression of the person's alcohol level").

29. 649 P.2d 251 (Alaska App.1982).

30. *Id.* at 253 n. 1.

31. *Id.* at 254 n. 6.

32. AS 28.35.030; AS 28.35.033; *see* Bill Analysis, Department of Public Safety, HB 833, March 6, 1980 (noting that "[b]reath analysis would be added to blood analysis as a method of determining intoxication"). The legislative history of the amended version of AS 28.35.030 that was introduced in 1980 is a complicated one. It was summarized in large part in *Van Brunt v. State*, 653 P.2d 343, 344 n. 2 (Alaska App.1982).

33. *See Gilbreath v. Municipality of Anchorage*, 773 P.2d 218, 222 (Alaska App.1989) (holding that once statutory requirements for admissibility of test results are satisfied, breath test result is admissible and weight of evidence is for trier of fact).

34. *See Cooley v. Municipality of Anchorage*, 649 P.2d 251, 255 n. 8 (Alaska App.1982) (noting presumption of breath test's validity means sufficient evidence to admit results into evidence but weight given to evidence factual matter for jury).

28.15.166(g)(2) requires a hearing officer to find that a chemical breath test produced a result described under AS 28.35.030(a)(2), that is, at or above .08 percent alcohol concentration in the person's blood or breath. And it is the test result, rather than a driver's intoxication level at the time of driving, that is the critical element: "The focus of [the hearing officer's inquiry under] subsection .166(g)(1)-(3) is clearly on the result of the test." [35] Even if the hearing officer had rejected the breath test result and assumed that Morris's .070 percent blood test was an accurate measurement of Morris's blood alcohol concentration at the time of the test, she could have reasonably concluded that Morris was above the legal limit at the time of his breath test even without reconciling the competing results. Specifically, had the hearing officer assumed the accuracy of the .070 percent blood test at 5:13 a.m., and extrapolated backwards in time using the average rate of alcohol elimination of .018 percent per hour, Morris's level of intoxication would have been .081 percent at 4:36 a.m., the time of his chemical breath test. Thus, his blood test result supports the conclusion that Morris was in excess of the legal limit at the time of his breath test.[36]

Moreover, using this same rate of elimination, Morris's intoxication level at the time of driving would have been .093 percent, remarkably in line with his preliminary breath test result of .092 percent. The blood test therefore supports the state's position that Morris's chemical test produced a result of .08 percent or more.[37] And while this exercise yields a breath test result different from that actually produced (.081 percent versus .089 percent), it is significant in that it confirms that on the morning in question Morris produced a chemical test result of at least .08 percent.[38] Under these circumstances, we cannot conclude that Morris's independent blood test is sufficiently exculpatory that the hearing officer could not have found that Morris's chemical test produced a result in excess of the statutorily proscribed level.

While an independent blood test result may have significant bearing on the weight afforded a breath test's reliability in a given case, Morris has failed to provide sufficient support for his proposition that in this case the hearing officer's finding is not supported by substantial evidence.[39]

## V. CONCLUSION

Because we conclude that substantial evidence supports the hearing officer's determination, we AFFIRM the decision to revoke Morris's driver's license.

BRYNER, Justice, not participating.

---

**35.** *Javed v. Dep't of Pub. Safety,* 921 P.2d 620, 625 (Alaska 1996) (noting statute contains "very precise limiting language for the issues that are to be considered").

**36.** *See Kaufman v. Dir. of Revenue,* 193 S.W.3d 300, 302–03 (Mo.App.2006) (noting driver failed to present sufficient evidence rebutting state's prima facie case where evidence challenges scientific reliability of test but failed to adduce evidence showing driver's alcohol content below legal limit).

**37.** AS 28.35.030(a)(2).

**38.** We do not address whether or when, under different facts, an unexplained or unsubstantiated variance between a chemical breath test and subsequent independent blood test will successfully impeach the validity of the state's chemical breath test result.

**39.** *See Byrne v. State,* 654 P.2d 795, 796 (Alaska App.1982) (noting defendant confused relevancy of evidence with its conclusiveness).