(238 P.3d 324)
No. 102,474

DUSTIN R. BARNETT, *Appellant*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellee*.

Opinion
filed September 3, 2010.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, for appel-
lant.

*James G. Keller*, of Legal Services Bureau, Kansas Department of Revenue, for
appellee.

Before STANDRIDGE, P.J., GREEN and HILL, JJ.

STANDRIDGE, J.: Dustin R. Barnett appeals the suspension of his driver's license after driving while under the influence of alcohol. For the reasons stated below, we affirm the suspension.

## FACTS

Barnett was pulled over by an Atwood police officer for having a loud stereo on July 24, 2007. Upon stopping Barnett, the officer noted that Barnett smelled like alcohol and had slurred speech, bloodshot eyes, poor balance or coordination, and difficulty communicating. The officer also saw alcohol containers in Barnett's car, and Barnett admitted to drinking that night. The officer administered field sobriety tests, which Barnett failed.

Barnett was transported to the Atwood Police Department and his blood alcohol content (BAC) was tested with an Intoxilyzer 5000. His BAC was .161, just over twice the legal limit. The Intoxilyzer 5000 used on Barnett was certified by the Kansas Department of Health and Environment (KDHE).

Barnett's driver's license was suspended by the Kansas Department of Revenue (KDR). Barnett timely requested a hearing to challenge the suspension. After hearing the evidence, the suspension was affirmed by an administrative hearing officer.

Barnett filed a petition with the district court for review of the hearing order. In his petition, Barnett did not dispute that the Intoxilyzer 5000 used to measure his BAC was certified by the KDHE. Instead, Barnett asserted that the Intoxilyzer used to measure his BAC should not have been certified by the KDHE because the Intoxilyzer at issue was not tested with the frequency required by administrative regulations during the months of January, April, and June 2007. The district court held a hearing on the petition. Upon review of the evidence and arguments presented at the hearing, the district court ultimately denied Barnett relief on grounds that the issue presented for review by Barnett—whether the KDHE improperly certified the Intoxilyzer—did not fall within the scope of issues that could be considered in an administrative challenge to the suspension of a driver's license.

ANALYSIS

Under K.S.A. 2009 Supp. 8-1020(h)(2), the scope of an administrative hearing such as Barnett's is limited to eight specific issues. The precise issue presented by Barnett in this appeal centers on K.S.A. 2009 Supp. 8-1020(h)(2)(D), which provides that a hearing shall be limited to whether "the testing equipment used was certified by the Kansas department of health and environment." Barnett argues that instead of limiting consideration to whether the machine is certified, the statute implicitly requires the hearing officer to further consider whether the machine was improperly certified. Interpretation of a statute is a question of law over which this court has unlimited review. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009).

In support of his argument, Barnett contends this court should follow the analysis set forth in *Meehan v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 183, 959 P.2d 940, *rev. denied* 265 Kan. 885 (1998). In *Meehan,* this court said that "[a] licensee can challenge, factually, whether the certifications were proper and whether the machine was operated in the manner required by the operations manual. Thus, a licensee can raise inconsistencies in the certification records or whether the testing officer actually followed all operational protocols." 25 Kan. App. 2d at 185.

Barnett's reliance on *Meehan* is misplaced. This is because the *Meehan* decision was rendered under a previous version of the statute, which limited the scope of issues that could be considered in an administrative challenge to suspension of a driver's license to whether "the testing equipment used was reliable." See K.S.A. 1997 Supp. 8-1002(h)(2)(D); 25 Kan. App. 2d at 184. Under the 1997 version of the statute, the scope of issues that could be considered in an administrative challenge to suspension of a driver's license included reliability of the testing equipment; thus, licensees could challenge the certification record for the testing equipment at administrative hearings. See 25 Kan. App. 2d at 185. K.S.A. 2009 Supp. 8-1020, the current relevant statute (enacted 2001; amended 2007) limits the scope of issues that can be considered, and the only one relevant to this appeal is whether the equipment was "certified." K.S.A. 2009 Supp. 8-1020(h)(2)(D).

Based on this legislative history and the version of the statute in place at the time Barnett's driver's license was suspended, we reject Barnett's argument that the current version of the statute implicitly requires the hearing officer to consider not just whether the testing equipment was certified, but whether the machine was improperly certified. As the district court noted, if the legislature intended to allow hearings to encompass proper certification of Intoxilyzers—rather than just whether the machine has been certified—it could have done so in the language of K.S.A. 2009 Supp. 8-1020(h)(2)(D).

Our decision to affirm the district court's dismissal on procedural grounds renders the underlying issue presented by Barnett moot.

"The mootness doctrine is one of court policy which recognizes that it is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive." *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996).

At the same time, we have recognized an exception to the mootness rule "where a particular issue, although moot, is one capable of repetition and one of public importance." *Duffy*, 259 Kan. at 504. In this case, Barnett asserts that the Intoxilyzer 5000 used to measure his BAC should not have been certified by the KDHE because the Intoxilyzer 5000 at issue was not tested with the frequency required by administrative regulations during the months of January, April, and June 2007. Based on our review of the arguments presented on appeal, we find the particular issue presented by Barnett, although moot, is one capable of repetition. Accordingly, we will address the merits of Barnett's claim.

In support of his improper certification claim, Barnett relies on the KDHE Breath Alcohol Training Manual, Standard #2, paragraph 1, which states that "[e]ach certified instrument will have a certified standard run during each calendar week (2 trials), recorded on the monthly Certified Standard Report and the original submitted **MONTHLY** to a Kansas Health and Environment Laboratory, Kansas Department of Health and Environment." Barnett argues that because the Atwood Police Department did not do four

tests in January 2007 and April 2007 and five tests in June 2007, the machine's certification was "deficient, according to the Kansas Department of Health and Environment's own protocol."

We note at the outset that under the KDHE Breath Alcohol Training Manual, Standard #2, paragraph 1, an Intoxilyzer must be tested once in "each *calendar* week." (Emphasis added.) By using the "calendar week" language instead of requiring weekly tests, the KDHE presumably meant that tests could be conducted as far apart as 13 days: a test could be run on the Sunday of one week and the Saturday of the next week and still satisfy Standard #2's requirements.

In January 2007, a test was run in the first calendar week (December 31, 2006), the second calendar week (January 7), the third calendar week (January 14), and the fourth calendar week (January 27). Therefore, Barnett's argument that the machine was improperly certified in January 2007 fails.

In June 2007, a test was run in the first calendar week (May 31, 2007), the second calendar week (June 9, 2007), the third calendar week (June 15, 2007), the fourth calendar week (June 23, 2007), and the fifth calendar week (June 30, 2007). Therefore, Barnett's argument that the machine was improperly certified in June 2007 fails.

Barnett is correct, however, that the Intoxilyzer at issue was not tested in each calendar week during the month of April 2007. In April 2007, the tests were conducted in the first, third, and fourth calendar weeks (April 7, 20, and 28). There was no test conducted in the second calendar week. Based on this missed test, Barnett argues the Intoxilyzer at issue in this case was improperly certified as a matter of law when he took his test in July 2007. We disagree for two reasons.

First, although paragraph 1 of the KDHE Breath Alcohol Training Manual, Standard #2 requires an Intoxilyzer to be tested once in each calendar week, the discretionary language used by the KDHE in paragraph 6 of that Standard indicates the certification revocation is not mandatory, but discretionary, in the event that instrument testing does not comply with certification directives. See KDHE Breath Alcohol Training Manual, Standard #2, para-

graph 6 ("Failure to participate in the breath analysis certified standard evaluation program *may* constitute reason for revoking certification of the Agency." [Emphasis added.]).

Second, we find it significant that there was only one lapse in testing and it occurred in the second week of April 2007, approximately 3 months prior to the administration of Barnett's test. The instrument was tested in each of the 14 calendar weeks immediately preceding Barnett's test and each of the 6 weeks after the test. The Certified Standard Reports submitted to the KDHE for the months of May, June, July, and August 2007 reflect full compliance with certification directives and no lapse in weekly testing.

Under the facts of this case, it was not improper for the KDHE to have certified the testing equipment at issue.

Affirmed.