(257 P.3d 1250)
No. 102,792

DAWN CRETEN, *Appellant*, v. KANSAS DEPARTMENT OF REVENUE, *Appellee*.

Opinion filed June 24, 2011.

*Bruce D. Mayfield*, of Bruce D. Mayfield, Chartered, of Overland Park, for appellant.

*J. Brian Cox*, senior litigation attorney, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

STANDRIDGE, J.: Dawn Creten appeals from the district court's decision to affirm the suspension of her driver's license by the Kansas Department of Revenue (KDR). In so doing, Creten argues the Tonganoxie Police Department's failure to perform a certified standard run of the Intoxilyzer machine during the calendar week immediately prior to her breath test necessarily established that the Tonganoxie Police Department failed to substantially comply with Kansas Department of Health and Environment (KDHE) procedures, which in turn rendered the results of her blood-alcohol concentration (BAC) test unreliable as a matter of law. The KDR cross-appeals, alleging the district court erred in various evidentiary rulings. For the reasons stated below, we affirm the suspension of Creten's driver's license and, as a result, decline to address the issues presented in the KDR's cross-appeal.

## FACTS

On December 16, 2007, Creten was pulled over by a Tonganoxie police officer for speeding and driving left of center. Upon making contact, the officer noted that Creten smelled of alcohol and had bloodshot eyes. After Creten failed numerous field sobriety tests, the officer arrested Creten and transported her to the Tonganoxie police station to take a breath test on an Intoxilyzer 5000 certified by the KDHE. The result of the test revealed that Creten had a BAC of .191; thus, the KDR suspended Creten's driver's license.

Creten appealed, and an administrative hearing officer (AHO) affirmed the suspension. On September 17, 2008, Creten filed a petition for judicial review in district court seeking de novo review of her claims that (1) the Intoxilyzer machine was not properly certified by the KDHE and (2) the Tonganoxie Police Department did not substantially comply with testing procedures established by

the KDHE in order to maintain the agency's certification of the Intoxilyzer machine.

At the hearing, Creten presented evidence showing that a certified standard run of the Intoxilyzer machine was performed on December 8, 2007, but a subsequent run was not performed until 8 days later on December 16, 2007, after Creten took a breath test on the machine earlier that same day. Creten argued the failure to perform a "certified standard run" of the machine during the calendar week of December 9 to December 15, 2007, was a violation of the KDHE Breath Alcohol Training Manual, Standard #2, paragraph 1, which states that "[e]ach certified instrument will have a certified standard run during each calendar week (2 trials), recorded on the monthly Certified Report and the original submitted **MONTHLY** to Kansas Department of Health and Environment Laboratory, Kansas Department of Health and Environment."

Christine Houston, the breath alcohol supervisor for the KDHE, testified that the 1-day delay in performing the certified standard run did not affect the reliability of the Intoxilyzer machine used to test Creten's breath. Houston noted that during the machine's external standard check of the standard solution that occurred immediately before testing Creten's breath, the machine registered a reading of .082. Houston stated that such a result indicated the machine was working properly because it correctly determined that the standard solution had an alcohol concentration between .070 and .089.

Houston also testified that if a law enforcement agency failed to perform a certified standard run on an Intoxilyzer machine during a calendar week, the KDHE would not automatically revoke the agency's certification of the machine. Instead, Houston stated that the KDHE would send a letter to the law enforcement agency reminding it to perform the weekly test.

The district court ultimately affirmed the suspension of Creten's driver's license. The court concluded that the failure to perform a certified standard run of the Intoxilyzer machine during the calendar week immediately prior to Creten's breath test—in and of itself—was insufficient to defeat a finding of substantial compliance with testing procedures established by the KDHE. In reaching this

decision, the court found particularly persuasive the testimony from Houston indicating that a 1-day delay in performing the certified standard run had no effect on the machine's reliability. In sum, the court held there was no evidence in this case from which to find that the underlying objective of the weekly testing—reliability—was compromised in any way.

## ANALYSIS

The sole issue presented by Creten on appeal is whether the failure to perform a certified standard run of the machine during the calendar week immediately prior to Creten's breath test necessarily established that the Tonganoxie Police Department failed to substantially comply with KDHE testing procedures, which in turn rendered the results of her BAC test unreliable as a matter of law. The KDR argues the issue presented by Creten is not within the scope of issues listed in K.S.A. 2007 Supp. 8-1020(h)(2) that can be raised to the court in an administrative review of a license suspension resulting from a breath test failure. Alternatively, the KDR argues that even if the issue is one that can be raised, substantial competent evidence supports the district court's finding that the Tonganoxie Police Department substantially complied with KDHE protocol requiring a weekly certified standard run of the machine. Given the procedural nature of the KDR's initial argument, we will discuss it first.

*Statutory Restrictions Related to Administrative Review When a Driver's License Suspension Results from a Breath Test Failure*

The sole legal authority upon which Creten relies to substantively challenge the suspension of her driver's license is K.S.A. 2007 Supp. 8-1020(h)(2)(F), which authorizes administrative review by the court of a suspension when the issue presented for review is whether "the testing procedures used substantially complied with the procedures set out by the Kansas department of health and environment." The KDR contends the issue presented by Creten does not come within the scope of K.S.A. 2007 Supp. 8-1020(h)(2)(F) because the "testing procedures" to which that subsection of the statute refers are limited to the procedures employed

by the individual officer as he or she actually administers a particular test to a particular person. Creten disagrees, arguing that the phrase "testing procedures" as used in K.S.A. 2007 Supp. 8-1020(h)(2)(F) also includes the weekly certified standard run that is performed to ensure continued certification of the Intoxilyzer machine by the KDHE.

Resolution of the issue presented hinges upon our interpretation of K.S.A. 2007 Supp. 8-1020(h)(2)(F). Issues of statutory interpretation raise pure questions of law and are subject to this court's unlimited review. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008). "[S]tatutory interpretation begins with the language selected by the legislature. If that language is clear, if it is unambiguous, then statutory interpretation ends there as well." 285 Kan. at 629. Ordinary words should be given their ordinary meaning. *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). Courts should not focus on an isolated part of a legislative act but are required, if possible, to consider and construe together all parts of the act in pari materia. *McIntosh v. Sedgwick County*, 282 Kan. 636, 642, 147 P.3d 869 (2006).

When, as here, an officer has certified under K.S.A. 2007 Supp. 8-1002(a)(3) that a licensee failed a breath test, K.S.A. 2007 Supp. 8-1020(h)(2) limits the scope of the court's administrative review of the agency decision to the following issues:

"(A) law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol or drugs, or both, or had been driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system;

(B) the person was in custody or arrested for an alcohol or drug related offense or was involved in a vehicle accident or collision resulting in property damage, personal injury or death;

(C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto;

(D) *the testing equipment used was certified by the Kansas department of health and environment;*

(E) the person who operated the testing equipment was certified by the Kansas department of health and environment;

(F) *the testing procedures used substantially complied with the procedures set out by the Kansas department of health and environment;*

(G) the test result determined that the person had an alcohol concentration of .08 or greater in such person's breath; and

(H) the person was operating or attempting to operate a vehicle." (Emphasis added.)

We must consider the various provisions of this statute in pari materia to reconcile and bring the provisions into workable harmony, if possible. See *Redd v. Kansas Truck Center*, 291 Kan. 176, 195, 239 P.3d 66 (2010). In so doing, we conclude that the legislature intended the phrase "testing procedures" in subsection (h)(2)(F) to be limited to the procedures employed by an individual officer administering a particular test to a particular person. We find particularly persuasive the legislature's decision to authorize administrative review of a challenge to the testing *procedure* used to measure BAC under K.S.A. 2007 Supp. 8-1020(h)(2)(F) and to independently authorize administrative review of a challenge to the testing *equipment* used to measure BAC under K.S.A. 2007 Supp. 8-1020(h)(2)(D). Based on its decision to authorize the administrative review of a challenge to the testing *procedure* in one subsection of the statute and administrative review of a challenge to the testing *equipment* in another subsection, we find the legislature intended K.S.A. 2007 Supp. 8-1020(h)(2)(D) to be the exclusive legal authority for presenting an administrative challenge to the testing *equipment* used to measure BAC. See *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006) (courts should construe statutes to avoid unreasonable results and should presume the legislature does not intend to enact useless or meaningless legislation).

Notably, our conclusion that the legislature intended the phrase "testing procedures" in subsection (h)(2)(F) to be limited to the testing procedures established by the KDHE regarding the *administration* of a breath test, not the testing procedures established by the KDHE to ensure the continued certification of an Intoxilyzer machine, is entirely consistent with the conclusion reached by those courts in Kansas that have interpreted and applied K.S.A. 8-1020(h)(2)(F). See *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 117-19, 200 P.3d 496, *rev. denied* 289 Kan. 1279 (2009) (pursuant to K.S.A. 8-1020[h][2][F], court addressed issue

of substantial compliance with KDHE protocols for administering breath test when driver, during 20-minute deprivation period, was allowed to drink cup of water and go to restroom alone for 2 to 4 minutes); *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 9-10, 163 P.3d 313 (2006) (pursuant to K.S.A. 8-1020[h][2][F], court addressed issue of substantial compliance with KDHE protocols for administering breath test when officer who administered breath test left driver alone in testing room several times for only a few seconds at a time during 20-minute deprivation period); *Schoen v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, 822-23, 74 P.3d 588 (2003) (pursuant to K.S.A. 8-1020[h][2][F], court addressed substantial compliance with KDHE protocols for administering breath test when officer failed to visually check to see if tubing running from simulator solution to Intoxilyzer 5000 was properly attached prior to administering breath test); *Bryant v. Kansas Dept. of Revenue*, No. 99,515, unpublished opinion filed January 16, 2009, slip op. at 4-7 (pursuant to K.S.A. 8-1020[h][2][F], court addressed substantial compliance with KDHE protocols for administering breath test in conjunction with 20-minute deprivation period); *Burkhart v. Kansas Dept. of Revenue*, No. 91,345, unpublished opinion filed September 10, 2004, slip op. at 2-4 (pursuant to K.S.A. 8-1020[h][2][F], court addressed issue of whether Intoxilyzer 5000 machine which printed "inverted" copy of test results substantially complied with KDHE protocols for administering breath testing); *Resner v. Kansas Dept. of Revenue*, No. 89,889, unpublished opinion filed January 9, 2004, slip op. at 3-5 (pursuant to K.S.A. 8-1020[h][2][F], court addressed issue of substantial compliance with KDHE protocols for administering breath test when officer who conducted 20-minute deprivation period was not the same officer who administered the breath test).

On a final note, and in conjunction with our finding that the legislature intended K.S.A. 2007 Supp. 8-1020(h)(2)(D) to be the exclusive legal authority for presenting the court with an administrative challenge to the testing *equipment* used to measure BAC, we acknowledge that another panel of this court has limited the scope of a K.S.A. 8-1020(h)(2)(D) challenge to whether the Intoxilyzer machine was actually certified at the time the driver was

tested. See *Barnett v. Kansas Dept. of Revenue*, 44 Kan. App. 2d 498, Syl. ¶ 2, 500, 238 P.3d 324 (2010) (issues concerning whether an Intoxilyzer machine was properly tested in order to maintain its certification with the KDHE were not issues encompassed by K.S.A. 2009 Supp. 8-1020[h][2][D]). In support of its holding, the *Barnett* court stated its belief that "if the legislature intended to allow hearings to encompass proper certification of Intoxilyzers—rather than just whether the machine has been certified—it could have done so in the language of K.S.A. 2009 Supp. 8-1020(h)(2)(D)." 44 Kan. App. 2d at 501.

Thus, even if Creten had presented the court with a challenge to the testing equipment under K.S.A. 2007 Supp. 8-1020(h)(2)(D) instead of K.S.A. 2007 Supp. 8-1020(h)(2)(F), the holding in *Barnett* likely would preclude administrative review by the court of her challenge because the issue she presents goes well beyond a claim that the equipment was not *actually* certified. As noted by the court in *Barnett*, legislative history suggests that such preclusion is precisely the outcome desired by the legislature. Under the 1997 version of the statute, the scope of issues that could be considered in an administrative challenge to suspension of a driver's license included reliability of the testing equipment; thus, licensees could challenge the certification record for the testing equipment at administrative hearings. See *Meehan v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 183, 185, 959 P.2d 940, *rev. denied* 265 Kan. 885 (1998). In 2001, however, the legislature amended the statute, now codified at K.S.A. 2010 Supp. 8-1020(h)(2)(D), to limit the scope of issues that can be considered under this subsection to whether the equipment was "certified." K.S.A. 2010 Supp. 8-1020(h)(2)(D).

In sum, we find the phrase "testing procedures" as used in K.S.A. 2007 Supp. 8-1020(h)(2)(F) does not include the weekly certified standard run that is performed to ensure continued certification of the Intoxilyzer machine by the KDHE. Because it does not come within the scope of issues that a court may consider upon judicial review of an administrative suspension of driving privileges, we are procedurally precluded from reaching the merits of the issue presented by Creten on appeal. Thus, albeit for reasons different from those cited by the district court, we affirm the district

court's decision to uphold administrative suspension of Creten's driving privileges. See *Bergstrom v. Noah*, 266 Kan. 847, 875-76, 974 P.2d 531 (1999) (if a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision). .

*Substantial Compliance*

Given our finding that the issue presented by Creten does not come within the scope of issues that a court may consider upon judicial review of a driver's license suspension, it appears the substantial compliance issue presented by Creten may be moot.

"The mootness doctrine is one of court policy which recognizes that it is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive." *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996).

At the same time, we have recognized an exception to the mootness rule "where a particular issue, although moot, is one capable of repetition and one of public importance." *Duffy*, 259 Kan. at 504. In this case, Creten asserts the failure to perform a certified standard run of the machine during the calendar week immediately prior to her breath test necessarily established that the Tonganoxie Police Department failed to substantially comply with KDHE procedures, which in turn rendered the results of her BAC test unreliable as a matter of law. Based on our review of the arguments presented on appeal, we find the particular issue presented by Creten, although moot, is one capable of repetition. Accordingly, we will address the merits of Creten's claim.

In support of her improper certification claim, Creten relies on the KDHE Breath Alcohol Training Manual, Standard #2, paragraph 1, which states that "[e]ach certified instrument will have a certified standard run during each calendar week (2 trials), recorded on the monthly Certified Standard Report and the original submitted **MONTHLY** to a Kansas Health and Environment Laboratory, Kansas Department of Health and Environment." Creten argues that because the Tonganoxie Police Department failed to

perform a certified standard run of the machine during the calendar week immediately prior to her breath test, the Tonganoxie Police Department failed to substantially comply with KDHE procedures, which in turn rendered the results of her BAC test unreliable as a matter of law.

In this case, a certified standard run of the Intoxilyzer machine was performed on December 8, 2007, and a subsequent run was performed 8 days later on December 16, 2007, after Creten took a breath test on the machine earlier that same day. Based on the facts presented and the applicable regulations, we agree with Creten that the Tonganoxie Police Department failed to perform a certified standard run of the machine during the calendar week immediately prior to her breath test and that its failure to do so means the Tonganoxie Police Department did not comply with KDHE procedures. For the reasons set forth below, however, we do not agree that the Tonganoxie Police Department failed to *substantially* comply with KDHE procedures.

First, paragraph 1 of the KDHE Breath Alcohol Training Manual, Standard #2 requires an Intoxilyzer machine to be tested once in each "calendar week." By using the "calendar week" language instead of requiring weekly tests once every 7 days, the KDHE presumably meant that tests could be conducted as far apart as 13 days: thus, a test could be run on the Sunday of one week and the Saturday of the next week and still satisfy Standard #2's requirements.

Second, although paragraph 1 of the KDHE Breath Alcohol Training Manual, Standard #2 requires an Intoxilyzer machine to be tested once in each calendar week, the discretionary language used by the KDHE in paragraph 6 of that Standard indicates the certification revocation is not mandatory, but discretionary, in the event that instrument testing does not comply with certification directives. See KDHE Breath Alcohol Training Manual, Standard #2, paragraph 6 ("Failure to participate in the breath analysis certified standard evaluation program may constitute reason for revoking certification of the agency.").

Third, there was undisputed expert testimony presented at the administrative hearing from which a factfinder reasonably could

conclude that the underlying objective of the weekly testing—reliability—was not compromised in any way. Houston, the breath alcohol supervisor for the KDHE, testified that the 1-day delay in performing the certified standard run did not affect the reliability of the Intoxilyzer machine used to test Creten's breath. Houston also testified that during the machine's external standard check of the standard solution that occurred immediately before testing Creten's breath, the machine registered a reading of .082. Houston stated that such a result indicated the machine was working properly because it correctly determined that the standard solution had an alcohol concentration between .070 and .089. Finally, Houston testified that if a law enforcement agency failed to perform a certified standard run on an Intoxilyzer machine during a calendar week, the KDHE would not automatically revoke the agency's certification of the machine. Instead, Houston stated that the KDHE would send a letter to the law enforcement agency reminding it to perform the weekly test.

Under the facts of this case, we find substantial competent evidence supports the district court's finding that the Tonganoxie Police Department substantially complied with KDHE protocol requiring a weekly certified standard run of the machine. Based on this finding, we decline to address any of the issues raised by KDR in its cross-appeal.

Affirmed.