NOT DESIGNATED FOR PUBLICATION

No. 115,187

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BLAKE ANDREW LUNDGRIN,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.


MEMORANDUM OPINION


Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed July 22, 2016. Reversed and remanded with directions.


*Donald J. Cooper*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.


*Robert G. German*, of Salina, and *George Rickey Robertson*, of Arlington, for appellee.


Before LEBEN, P.J., STANDRIDGE and ARNOLD-BURGER, JJ.


*Per Curiam*:  The Kansas Department of Revenue (KDOR) appeals the district court's decision reversing the administrative suspension of Blake Andrew Lundgrin's driving privileges. Upon review of the record, we agree that the district court's factual findings fail to support its conclusion that the officer lacked reasonable grounds to believe Lundgrin had been driving under the influence of alcohol. Accordingly, we reverse and remand the matter with directions to reinstate the suspension of Lundgrin's driving privileges.

FACTS

At 2:20 a.m. on July 20, 2014, Saline County Sheriff's Deputy Bryan Cox was on patrol in Salina when he began following a dark-colored pickup. Cox followed the truck for almost 2 miles and did not observe any traffic infractions. Just south of the intersection of North and Ohio streets, the truck briefly drove up over a curb. Based on this traffic infraction, Cox turned on his lights to initiate a traffic stop.

Deputy Cox made contact with the driver and sole occupant of the truck, who was later identified as Lundgrin. Cox asked Lundgrin to produce his driver's license and insurance information and advised him of the reason for the stop. Lundgrin stated that he was coming from a friend's house and explained that he had run over the curb because he was talking on the phone. Cox noticed that Lundgrin's eyes were bloodshot and watery and that his speech was slurred. Cox detected an odor of alcohol coming from the truck and asked Lundgrin if he had been drinking. Lundgrin replied that he had not been drinking and that he was the designated driver. Lundgrin later admitted, however, that he had been at Outlaws bar and consumed two beers. An open can of Coors Light was found in a cup holder inside the truck.

Cox had Lundgrin perform field sobriety tests. Cox observed four clues of impairment during the walk-and-turn test and two clues of impairment during the one-leg-stand test. Cox asked Lundgrin to take a preliminary breath test (PBT), but Cox refused. At this point, Cox arrested Lundgrin and took him to the sheriff's department, where Lundgrin submitted to a breath test on the department's Intoxilyzer 8000. Cox started the required 20-minute deprivation period at 2:49 a.m. and collected a breath sample at 3:11 a.m. But the Intoxilyzer results reflected that the sample was collected at an invalid time, showing that it had been collected at 2:54 a.m. It is unclear whether this reading resulted from human or mechanical error. Cox started the process over by reentering the information into the Intoxilyzer. Consistent with the protocol to follow for

2

an improper time readout set forth by the Kansas Department of Health and Environment (KDHE), Cox did not wait an additional 20 minutes to collect the sample because Lundgrin had been in his presence the entire time after the initial deprivation period, had not had anything to eat or drink, and had not burped or vomited. Thereafter, the Intoxilyzer returned a valid breath sample of .205.

The results of Lundgrin's breath test resulted in the suspension of his driver's license. Lundgrin appealed, and an administrative hearing officer affirmed the suspension. Lundgrin filed a petition for review in the district court. Relevant to this appeal, Lundgrin sought de novo review of his claims that Cox (1) lacked reasonable grounds to believe he was operating his vehicle while under the influence of alcohol and (2) failed to administer the Intoxilyzer test correctly. After hearing testimony from Cox and argument from counsel, the district court overturned Lundgrin's driver's license suspension. Specifically, the district court judge stated:

"Given the totality of these circumstances, two miles is an incredible period of time for an individual who would seem to be exhibiting some form of impairment to not in some way have some type of a traffic activity that would cause the officer to be drawn to the attention of that vehicle.

"The officer testified he had no basis to be behind this vehicle when he apparently became behind the vehicle just a matter of a routine driving down the road and these two vehicles happen to occupy the same road at the same time.

"So nothing drew the attention of the officer in the beginning to even have him follow this vehicle.

"There was a reasonable explanation given to the striking of the curb which also the Court finds presented itself as an unusual traffic hazard because of the configuration of the roadway and the activity that was happening on the roadway at that point in time.

"Combine that with the failure of the machine or in some manner the issue of how the information apparently was input into the machine, we simply don't know, but we rely heavily upon the statistical probabilities of these particular testing procedures,

they've been challenged, they've been affirmed, and yet we have in this point in time a machine telling us that the deprivation period had not been met.

. . . .

"Given the totality of the circumstances, the significant observation opportunity of the officer and the driving behaviors of the individual in this matter, the failure of the machine for whatever reason, the balancing determination for the Court is whether in the totality of circumstances the officer had a reasonable basis, the Court does not believe under the totality of the circumstances, given the failure of the machine perhaps or those circumstances beyond the control of the officer . . . the Court would find that the determination of the examiner should be overturned . . . ."

## ANALYSIS

On appeal, the KDOR challenges the district court's decision to overturn Lundgrin's driver's license suspension. Specifically, it claims the court erred (1) by finding that Deputy Cox did not have reasonable grounds to believe Lundgrin was driving under the influence of alcohol and (2) by finding that the breath test results were not reliable due to a malfunction with the Intoxilyzer 8000 used to test Lundgrin. We address each of these claims in turn.

Following a trial de novo on an administrative license suspension, an appellate court reviews a district court's findings to determine if they were supported by substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Substantial competent evidence is evidence a reasonable person might accept as sufficient to support a conclusion. *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015). Whether substantial competent evidence exists is a question of law. *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010). In determining whether the district court's findings were supported by substantial competent evidence, an appellate court will not reweigh the evidence, make witness credibility determinations, or redetermine factual questions. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011). After determining whether the district court's factual findings are supported by substantial

4

evidence, we independently must consider the ultimate legal question of whether the officer had reasonable grounds. *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, Syl. ¶ 1, 233 P.3d 286 (2010).

1. *Reasonable grounds*

The KDOR argues the district court erred in finding Deputy Cox did not have reasonable grounds to believe Lundgrin was operating a motor vehicle while under the influence of alcohol. Without reasonable grounds, Cox was not authorized to request the breath test for alcohol Lundgrin ultimately consented to take on the Intoxilyzer 8000 at the sheriff's department, the results of which showed a level of alcohol in his system over the legal limit permitted for drivers operating a vehicle.

Anyone attempting to operate or operating a vehicle in Kansas is deemed to have given consent to testing to determine the presence of alcohol or drugs. K.S.A. 2015 Supp. 8-1001(a). A law enforcement officer shall request the person submit to testing if the officer has reasonable grounds to believe an individual was under the influence of alcohol or drugs while operating or attempting to operate a vehicle and the person has been arrested or otherwise taken into custody for any violation of a statute or ordinance. K.S.A. 2015 Supp. 8-1001(b)(1)(A). The reasonable grounds test of K.S.A. 2015 Supp. 8-1001(b) is strongly related to the standard for determining probable cause to arrest. See *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514-15, 242 P.3d 1179 (2010); *Gross v. Kansas Dept. of Revenue*, 26 Kan. App. 2d 847, 848-49, 994 P.2d 666, *rev. denied* 269 Kan. 932 (2000). Probable cause to arrest is the reasonable belief, drawn from the totality of the information and reasonable inferences available to the arresting officer, that an individual has committed or is committing a specific crime. *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012).

In reversing the administrative action suspending Lundgrin's driver's license, the district court relied on the following facts to conclude—as a matter of law—that Deputy Cox did not have reasonable grounds to believe Lundgrin was driving under the influence:

- Cox followed Lundgrin for approximately 2 miles without observing suspicious traffic activity.
- Lundgrin had a reasonable explanation for striking the curb.
- The curb constituted an "unusual traffic hazard."

The KDOR claims that the district court failed to consider other factors which led Cox to believe that Lundgrin was driving under the influence of alcohol. To that end, our Supreme Court has held that all of the circumstances related to the driver's situation should be considered when assessing reasonable grounds. *Smith*, 291 Kan. at 515. In this case, the district court relied only on evidence relating to Cox's decision to initiate a traffic stop and completely disregarded the following facts:

- Lundgrin committed the traffic infraction at 2:20 a.m.
- Lundgrin's eyes were bloodshot and watery.
- Lundgrin's speech was slurred.
- Cox smelled alcohol coming from Lundgrin's truck.
- Lundgrin initially stated that he had not been drinking but later admitted to consuming two beers.
- An open can of Coors Lights was located in the cup holder in Lundgrin's truck.
- Lundgrin exhibited four clues of impairment during the walk-and-turn field sobriety test.
- Lundgrin exhibited two clues of impairment during the one-leg-stand field sobriety test.

6

- Lundgrin refused to submit to a PBT.

See, *e.g.*, *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 659-60, 256 P.3d 845 (2011) (finding reasonable grounds from odor of alcohol, bloodshot eyes, admission of drinking, clues of impairment on field sobriety tests, brief driving irregularities, and status of driver as a minor); *Smith*, 291 Kan. at 518-19 (finding reasonable grounds when driver smelled of alcohol, had bloodshot and watery eyes, admitted to drinking, possessed an open container, and presented clues of impairment on field sobriety tests); *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431-32, 962 P.2d 1150 (finding reasonable grounds when driver was speeding in the early morning hours, smelled of alcohol, had glazed and bloodshot eyes, and admitted to having had a few drinks), *rev. denied* 266 Kan. 1107 (1998).

Considering all of the evidence in the record, substantial competent evidence does not support the district court's conclusion that Cox lacked reasonable grounds to believe Lundgrin was driving under the influence of alcohol.

2. *Reliability of the Intoxilyzer machine*

The KDOR also argues the district court erred by finding that the test results were not reliable due to a malfunction with the Intoxilyzer 8000 used to test Lundgrin.

K.S.A. 2015 Supp. 8-1020(h)(2) limits the scope of an administrative hearing on a driver's license suspension by setting forth an exclusive list of issues that may be addressed. See *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 631, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 1011-13, 350 P.3d 1048 (2015). When, as here, an officer has certified under K.S.A. 2015 Supp. 8-1002(a)(3) that a licensee failed a breath test, the scope of the hearing is limited to whether:

7

"(A) A law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol or drugs, or both, . . . ;

"(B) the person was in custody or arrested or was involved in a vehicle accident or collision resulting in property damage, personal injury or death;

"(C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto;

"(D) the testing equipment used was certified by the Kansas department of health and environment;

"(E) the person who operated the testing equipment was certified by the Kansas department of health and environment;

"(F) the testing procedures used substantially complied with the procedures set out by the Kansas department of health and environment;

"(G) the test result determined that the person had an alcohol concentration of .08 or greater in such person's breath; and

"(H) the person was operating or attempting to operate a vehicle." K.S.A. 2015 Supp. 8-1020(h)(2).

Our Supreme Court has determined that K.S.A. 2015 Supp. 8-1020(h)(2)(A)-(H) is "clear and unambiguous; and its list of issues that may be decided in an administrative driver's license suspension hearing is exclusive." *Martin*, 285 Kan. 625, Syl. ¶ 2.

Resolution of the issue presented by Lundgrin necessarily involves interpretation of K.S.A. 2015 Supp. 8-1020(h)(2). Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 955, 335 P.3d 1178 (2014). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *In re Tax Appeal of Burch*, 296 Kan. 713, 722, 294 P.3d 1155 (2013). We do not focus on an isolated part of

a legislative act but rather consider and construe all parts of the act *in pari materia* with a view of bringing the provisions into workable harmony. *Redd*, 291 Kan. at 195.

Lundgrin's original petition for review to the district court did not make reference to any subsection within K.S.A. 2015 Supp. 8-1020(h)(2). The petition stated, in relevant part, that Deputy Cox "failed to comply with the law relating to the offer and/or proposed administration of the breath test, including, but not limited to, offering, requesting and administering the same in a procedurally correct manner and also including a failure to provide oral and written notices as required by law." At the de novo hearing before the district court, Lundgrin appeared to suggest that the second test result from the Intoxilyzer was not reliable because the machine had been "mishandled." Based on this argument, the district court agreed that "the failure of the machine" warranted a reversal of Lundgrin's driver's license suspension.

But our court has repeatedly rejected challenges to the reliability of the results of the Intoxilyzer machine under K.S.A. 2015 Supp. 8-1020(h)(2). See *Creten v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 1098, 1103, 257 P.3d 1250 (2011) (precluding challenge to reliability of Intoxilyzer machine under K.S.A. 2007 Supp. 8-1020[h][2][F]); *Barnett v. Kansas Dept. of Revenue*, 44 Kan. App. 2d 498, 501, 238 P.3d 324 (2010) (precluding challenge to proper certification of Intoxilyzer machine under K.S.A. 2009 Supp. 8-1020[h][2][D]; *Armstrong v. Kansas Dept. of Revenue*, No. 108,270, 2013 WL 4564962, at *3 (Kan. App. 2013) (unpublished opinion) (precluding challenge to accuracy and reliability of Intoxilyzer as it related to measurement of blood-alcohol concentration in individuals with diabetes), *rev. denied* 299 Kan. 1269 (2014); *Mowry v. Kansas Dept. of Revenue*, No. 106,781, 2012 WL 6217192, at *5 (Kan. App. 2012) (unpublished opinion) (precluding challenge to reliability of Intoxilyzer machine under K.S.A. 2011 Supp. 8-1020[h][2][G] based on claim that machine was not functioning properly at time of licensee's arrest).

The legislative history of K.S.A. 8-1020(h)(2) is consistent with the holdings in these cases. Under the previous version of the statute, reliability of the testing equipment was included within the scope of issues that could be considered in an administrative challenge to suspension of a driver's license. See K.S.A. 1997 Supp. 8-1002(h)(2)(D); *Creten*, 45 Kan. App. 2d at 1105; *Barnett*, 44 Kan. App. 2d at 500. But in 2001, the legislature removed these provisions from 8-1002 and added similar provisions in a new statute—K.S.A. 8-1020. The language in section (h)(2)(D) was revised, changing the scope of review from whether the equipment was "reliable" to whether it was "certified." See K.S.A. 2015 Supp. 8-1020(h)(2)(D). When the legislature revises an existing law, the court presumes that the legislature intended to change the law as it existed prior to the amendment. See *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 458, 264 P.3d 102 (2011). Accordingly, we presume the legislature intended to restrict challenges to the reliability of the equipment.

Here, Lundgrin challenged the reliability of the Intoxilyzer test result, arguing that the invalid time error message following the first test was evidence that the Intoxilyzer did not function properly at the time of his test. Lundgrin did not, however, argue that the Intoxilyzer machine was not certified, that Deputy Cox was not certified to operate the machine, or that the testing procedures employed did not substantially comply with KDHE's requirements. Because the reliability of the Intoxilyzer does not fall within the exclusive list of issues that can be raised in an administrative hearing, K.S.A. 2015 Supp. 8-1020(h)(2)(A)-(H), the district court erred in relying on "the failure of the machine" to reverse the administrative suspension of Lundgrin's driver's license.

Reversed and remanded with directions to reinstate the license suspension.