NOT DESIGNATED FOR PUBLICATION

No. 119,832

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CASEY MICHAEL BAKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed April 3, 2020. Appeal dismissed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: In this opinion we once again consider whether a convicted defendant's allegations of error in the district court survive after the defendant himself passes away during the pendency of his appeal. After applying prior caselaw, we are convinced that the claims made by Casey Michael Baker in this appeal are moot and therefore his appeal must be dismissed.

Baker was convicted in 2018 of one count of possession of methamphetamine and one count of possession of drug paraphernalia following a bench trial. Baker filed this

1

appeal, alleging that the district court erred by denying his motion to suppress evidence discovered through a warrantless search at the time of his arrest. When Baker was arrested on an outstanding warrant, a Lawrence police officer searched the contents of both Baker's wallet and backpack, where he found the methamphetamine and drug paraphernalia. Baker argues the evidence should have been suppressed by the district court because the Lawrence Police Department's unwritten inventory policy is vague and improperly discretionary.

In addition, Baker argues the district court erred at a suppression hearing when it denied his request to reopen the evidence and allow him to testify on suppression issues, even though he had declined to testify at the original hearing on the motion to suppress. The district court ultimately denied the motion to suppress, ruling the evidence seized from Baker would have been inevitably discovered during an inventory search of his possessions at the jail.

Baker's counsel filed his appellate brief on January 29, 2019. The State filed its brief on May 28, 2019. However, on September 9, 2019, the State filed a "notice of death" with the appellate clerk along with a published obituary indicating that Baker had died. No response contradicting this notice was filed by Baker's counsel. Based upon the State's death notice, and operating on the assumption that Baker had indeed passed away, we ordered additional briefing from the parties on the issue of whether Baker's death rendered the issues in the case moot, thus requiring Baker's appeal to be dismissed. We specifically directed the parties to discuss the application of *State v. Hollister*, 300 Kan. 458, 329 P.3d 1220 (2014), and *State v. Cada*, No. 111,440, 2016 WL 367999 (Kan. App. 2016) (unpublished opinion), to this case. Once again, after we entered the order for supplemental briefing we received nothing further from Baker's counsel indicating his client was alive and therefore supplemental briefing was unnecessary. Instead, we received the supplemental briefs both from Baker's counsel and the State, including Baker's rather shocking argument that we should not assume he was deceased, but instead

2

should remand the case to the district court for an evidentiary hearing as to whether Baker is alive or dead. We have now reviewed the supplemental briefing we requested from the parties and are ready to rule.

Mootness does not affect our court's ability to hear and decide a case, because it is not jurisdictional. But it is a doctrine which recognizes that the role of courts is to determine real rather than abstract or hypothetical controversies. *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009). Kansas appellate courts "do not decide moot questions." *State v. Montgomery*, 295 Kan. 837, Syl. ¶ 2, 286 P.3d 866 (2012). Instead, a court "determine[s] real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it" and "adjudicate[s] those rights in such manner that the determination will be operative, final and conclusive." *Bennett*, 288 Kan. at 89.

In *Hollister*, our Supreme Court modified the historic doctrine that our courts were to consider all issues a defendant raised on appeal, even if the defendant died during the pendency of the appeal. *State v. Burnison*, 247 Kan. 19, 32, 795 P.2d 32 (1990); *State v. Jones*, 220 Kan. 136, Syl. ¶ 1, 551 P.2d 801 (1976). By applying well-accepted mootness rules, the *Hollister* court held that an appellate court may properly consider an issue on appeal following the death of the defendant if it presents a matter of statewide importance or significant public policy, it "remains a real controversy," or it would likely be replicated in other cases. 300 Kan. at 467. *Hollister* teaches that an appellate court should assess whether a ruling favorable to the defendant would result in the defendant's exoneration. Thus, a reviewing court ought to consider and decide an allegation that the State's evidence was insufficient for conviction, because it might result in a reversal and dismissal of charges against the defendant. A reversal of that sort could result in "clear[ing] [the defendant's] name." 300 Kan. at 467. On the other hand, an appellate court should be much quicker to treat fact-specific issues, i.e., those which, if the

3

defendant was successful, would be likely to result in a reversal and remand for a new trial, as issues which are moot.

In his appeal, Baker challenges two aspects of the underlying proceedings in district court. First, he contends that the Lawrence Police Department's unwritten inventory policy, which was utilized by police in seizing the items of evidence from Baker, is insufficient as a matter of law because it was not designed to produce an inventory, was entirely vague and discretionary, and was not corroborated by an additional officer. Second, Baker contends the district court erred on two separate occasions by denying Baker's request to testify: once when he changed his mind and requested to testify after the evidence was closed on his motion to suppress, and once again at his motion to reconsider the district court's denial of the motion to suppress.

In the initial argument of his supplemental brief, Baker's appellate counsel essentially contends that *Hollister* was incorrectly decided by our Supreme Court and complains that the opinion was issued "sua sponte and without briefing." Instead, counsel suggests that, since neither the *Hollister* decision nor any other provision of statutory law defines "exoneration," we should look to the holding in *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 355 P.3d 667 (2015), for guidance. In *Mashaney*, our Supreme Court considered a legal malpractice suit brought by a criminal defendant after his conviction had been overturned in an action under K.S.A. 60-1507 based upon ineffective assistance of counsel. Even though Mashaney was subject to being retried on his charges, our Supreme Court was called upon to adopt a rule establishing, for purposes of the statute of limitations, when a claim for legal malpractice actions by a defendant should be deemed to have accrued. This was a case of first impression in Kansas. After considering how several other states handled this situation, our court declared:

> "[W]e are most persuaded by the opinions of the six jurisdictions that select the date of
> the court decision reversing or vacating a conviction as the point in time when

exoneration occurs and the civil cause of action accrues. We are also influenced by the fact that at least two other jurisdictions have implied that they too would adopt a rule consistent with the six. As these courts have observed, this rule establishes as bright a line as is possible. No such bright line is discernible if exoneration and accrual are contingent on whether the State decides to continue or revive prosecution of the defendant, a decision that may be made promptly or never, depending on whether there is pressure from a statute of limitations. No such bright line is discernible if exoneration and accrual are dependent on whether a particular generation of prosecutors are willing to be forthcoming about their plans.

"After careful consideration of the competing authorities from other states we hold that a Kansas criminal defendant is 'exonerated' *for purposes of accrual of his or her civil legal malpractice claim against counsel* on the date that a court grants relief from the conviction on the basis of ineffective assistance of counsel. That relief may come as the result of a K.S.A. 60-1507 motion or some other procedural mechanism in the district court or in one of the appellate courts." (Emphasis added.) *Mashaney*, 302 Kan. at 637-38.

Baker's counsel contends the *Mashaney* holding, that reversal of a conviction automatically equates to exoneration in malpractice actions, should also be the standard in criminal cases. In other words, Baker believes that any issue a defendant raises on appeal which might be potential reversible error should be heard and decided by the appellate courts, even after he or she dies while the appeal is pending.

In response, the State notes that the language of *Mashaney* was carefully limited to only "civil legal malpractice claim[s]." They also argue that, lacking a statutory or case law definition of "exonerate" in a criminal context, we should utilize the typical meaning of the word in Black's Law Dictionary as "free from responsibility" or "clear of all blame." Black's Law Dictionary 721 (11th ed. 2019).

We agree with the State's position for two reasons. First, in reading *Mashaney*, we note the Supreme Court was careful to make sure that its holding was restricted to

5

exoneration for the purposes of a civil action. This care is evident from the fact the opinion places the word "exonerated" in quotation marks followed by the qualifying language "for purposes of accrual of his or her civil legal malpractice claim against counsel." *Mashaney*, 302 Kan. at 638. This language convinces us that our Supreme Court was well aware it was distinguishing between criminal and civil notions of exoneration.

Second, and more importantly, we find it implausible that the Supreme Court, which decided *Hollister* in 2014, would vitiate that decision by mere implication a year later in 2015, when *Mashaney* was released. In short, we are unconvinced by the arguments of Baker's counsel that *Mashaney* should have any impact on the issues in this case.

In more specific response to our request for the impact of *Hollister* and *Cada* on this appeal, Baker's appellate counsel presents five arguments in support of his position that we should proceed to consider the issues he raises in his original brief and not dismiss Baker's appeal as moot: (1) the State has not proved that Baker is dead and the matter should be remanded for fact-finding as to his mortality; (2) even if Baker is dead, reversal would exonerate him; (3) even if Baker is dead, this case "remains a real controversy"; (4) if the defendant's appeal issues are deemed moot following his death, and there are no conviction-related consequences, the ultimate outcome should be vacation of the conviction, not merely reversal and remand; and (5) even if the merits of the case are moot, the issues are "capable of repetition."

1. *Fact-finding as to Baker's death*

Defense counsel's first argument, that determination as to whether Baker is dead requires us to remand to the district court for an evidentiary hearing, strikes us as a singularly frivolous and inappropriate demand. Given the lapse of time since the State's

6

"Notice of Death" with its attached obituary, Baker's counsel either knows, or *should* know, whether his client is deceased. In our view, counsel's duty of fidelity to his client and diligent representation of his interests would suggest the State's notice should cause him to confirm this information, or notify us and opposing counsel if it is untrue. While counsel is correct that the matter of Baker's death is not on the list of matters which may be judicially noticed under K.S.A. 60-412, we believe basic principles of judicial comity are at work here.

If Baker is, in fact, alive, his counsel should have demonstrated good faith to his client by reporting this fact to us and to the State. In this instance he obviously ought to have informed his client that a case of mistaken identity was apparently afoot. So we regard counsel's request for an evidentiary hearing as nothing more than a make-work suggestion which unnecessarily diverts resources from the real matters at issue here and flies in the face of accepted notions of judicial economy. In short, if Baker is alive, there was no need whatsoever for supplemental briefing and arguments over mootness upon death would themselves become moot.

We note that a recent decision by the Second United States Circuit Court of Appeals described failure by counsel for a plaintiff to notify the court of their client's death for 11 months, even though opposing counsel repeatedly raised the issue, as "inexcusable." *Marentette v. City of Canandaigua*, *New York*, No. 19-205-CV, 2020 WL 556382 (2d Cir. 2020) (unpublished opinion). The Second Circuit panel dismissed the appeal and referred plaintiff's counsel to a disciplinary panel. *Marentette*, 2020 WL 556382, at *2. Our case represents a similar situation, i.e., defense counsel's silence in the face of a contention by the State that his client is deceased. Remarkably, this silence was later coupled with defense counsel's demand for a postbriefing evidentiary hearing in the district court, at which the State would have the burden to prove his own client's death. Like the Second Circuit panel in *Marentette*, we believe the basic principle of forthrightness to the tribunal and the State required appellate counsel to confirm or deny

7

his client's death. Although in this case we are not prepared to go to the same lengths with counsel as in *Marentette*, we find it unnecessary to burden the record further at the request of Baker's counsel. And although the case before us is a criminal matter and *Marentette* was a civil action, we see little logical difference in the duty of counsel to keep an appellate court informed. In other words, if Baker is alive, we can conceive of no reason why his appellate counsel should not have told us so in response to the State's notice.

2. *Whether reversal means exoneration*

The second reason Baker's counsel gives for full consideration of this appeal is that even if Baker is dead, reversal would exonerate him. To reiterate, Baker's issues on appeal were the alleged wrongful seizure of items from his person pursuant to the Lawrence Police Department's inventory policy and the district court's denial of his belated request to testify at the suppression hearing.

In support of his argument, defense counsel once again cites *Mashaney* to argue that reversal on appeal equals exoneration. We will not repeat our previous analysis, other than to note our view that *Mashaney* does not effectively overrule *Hollister*. But we are convinced that even if Baker was successful in his appeal, neither of the issues he raises would result in his exoneration. Despite the dissent by now-Chief Justice Marla Luckert in *Hollister* calling for abatement *ab initio* of all charges when an appealing defendant dies, thus effectively resulting in exoneration, the majority of our Supreme Court in *Hollister* did not support such a blanket rule, opting instead for the three-factor inquiry noted above.

A victory by Baker on his first issue on appeal, which would result in suppression of the evidence by application of the exclusionary rule to the items seized under the Lawrence Police Department inventory policy, would only have resulted in a remand for

a new trial and instructions to the district court to grant the suppression motion. In *Cada*, the defendant raised issues concerning: (1) the district court's limitation on cross-examination of the victim's mother, (2) an allegedly erroneous jury instruction, and (3) complaints about prejudicial comments by the prosecutor in closing arguments. Similarly to the issues in *Cada*, Baker's contentions concerning the need for suppression of the seized items here are fact-specific and do not turn on a broad policy question or an important and undecided point of law that can be easily defined apart from the factual record.

On his second issue on appeal, even if Baker succeeded in convincing us that he should have been permitted to testify at the suppression hearing, the result would simply be a remand to the district court to rehear the motion with the addition of Baker's testimony. If we assume Baker is deceased, such a rehearing is obviously an impossibility.

Thus, we conclude that the remedy to which Baker would be entitled if he were successful with his appeal would be a reversal and remand for a new trial, which would be impossible given his death. But under *Hollister* this is different from a posthumous clearing of Baker's name, i.e., an exoneration.

A like result under similar circumstances was reached by a panel of our court in *State v. Manns*, No. 111,205, 2015 WL 3514005 (Kan. App. 2016) (unpublished opinion). In *Manns*, the defendant appealed the district court's denial of his motion to suppress the fruits of an allegedly defective search warrant. Defendant Manns died during the pendency of his appeal. His appeal alleged that *Hollister* should not apply because reversal on his suppression issue would be "'tantamount to exoneration.'" 2015 WL 3514005, at *3. Although Manns was convicted by bench trial on stipulated facts following denial of the suppression motion, our court noted that "there is no indication that the evidence seized pursuant to the search warrant is the only evidence against

9

Manns." 2015 WL 3514005, at *3. After noting the defense suggestion that evidence seizure through the search warrant at issue was the sum of all evidence against Manns, the panel concluded that "aside from Manns' conjecture that no other evidence exists, there is nothing in this case indicating that the State could not proceed to a retrial even without the evidence at issue." 2015 WL 3514005, at *3. Applying *Hollister*, the *Manns* panel concluded that the best result the defendant could hope for was a reversal with a remand directing that the suppression motion be granted, which would not, however, "posthumously clear his name." 2015 WL 3514005, at *4. Our court ordered Manns' appeal dismissed as moot due to his death. We believe the same result must occur in Baker's appeal.

3. *Whether a real controversy survives Baker's death*

The third reason raised by Baker's appellate counsel in suggesting the appeal not be deemed moot is his contention that a real controversy remains even if Baker is deceased, because "there are several direct and indirect effects of a criminal conviction that remain, even after the death of an appellant." Specifically, defense counsel notes that Baker was assessed a KBI laboratory fee of $400, a Senate Bill 123 assessment fee of $175, and a Senate Bill 123 offender reimbursement fee, not to mention any additional costs related to the appeal including attorney fees, transcript fees, and similar charges. And counsel notes that under K.S.A. 22-3801(a) those sums survive as civil judgments against Baker, even following his death. See *State v. Douglas*, 47 Kan. App. 2d 734, 739, 279 P.3d 133 (2012).

Baker's counsel notes that neither *Hollister* nor *Cada* addressed this issue of court costs surviving the death of an appellant as civil judgments and complains that this was caused by the *Hollister* court raising the issue of mootness sua sponte and then ruling without additional briefing. He contends these decisions should have taken account of other potential legal consequences of a criminal conviction, such as:  forfeiture of

10

insurance or retirement benefits, changes in probate standing, immigration status of remaining family members, and status of any professional licensure. Counsel also argues that, in addition to these tangible effects, there are the intangible effects of "remain[ing] forever branded a convicted felon, even if that felony conviction resulted from an illegal search."

In response, the State contends that the collateral consequences described by the defense are irrelevant to the original issues he raised on appeal, since there is no guarantee that his conviction, and any collateral consequences flowing from it, would be eradicated if he prevailed on appeal. In short, if Baker were alive, the best he could hope for would be a chance at a new trial with undeterminable results. Since he is dead, a retrial is obviously impossible, so the relief he would be entitled to if he prevailed on appeal is unavailing, thus rendering his issues moot.

More basically, the State argues that *Hollister* stands for the proposition that only real controversies will be considered by the court. The State cites to *Creten v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 1098, Syl. ¶ 3, 257 P.3d 1250 (2011), to argue that courts are only "to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before [them] and to adjudicate those rights in such a manner that the determination will be operative, final and conclusive." The State warns that expanding this inquiry to delve into all the possible collateral consequences to Baker "risks swallowing the rule" of *Creten* and similar cases. In short, the State summarizes that "[t]o hold that the existence of these collateral consequences maintains the controversy after death means that *almost every criminal case fits within the second Hollister category."* (Emphasis added.)

We agree with the State's argument. Baker's appellate counsel in effect asks us to chart a course which essentially eliminates *Hollister*'s mootness considerations by treating every case, including Baker's, as falling under the "real controversy" exception,

11

since every case has potential collateral consequences. We view this as simply a backdoor way of Baker's counsel arguing to us that *Hollister*, and by extension *Cada*, were wrongly decided and should be overruled. But we are not aware of any indication that our Supreme Court intends to abandon its reasoning in *Hollister*, and therefore we are duty bound to follow its holdings. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

4. *Whether mootness justifies vacating a conviction*

In the fourth argument of appellant's supplemental brief, Baker's counsel takes a different tack. He argues alternatively that, if it is conceded that Baker is deceased and his issues on appeal are deemed moot, the end result should not be allowing the conviction to stand, but it should be entirely vacated. In short, Baker's counsel urges us to adopt the position taken by now-Chief Justice Luckert in her *Hollister* dissent, i.e., that death of a criminal appellant should result in abatement of the conviction *ab initio*.

Once again, even if we were sympathetic to Baker's argument, the majority in *Hollister* took a different approach from Justice Luckert, and we are not free to embrace and apply the views of the dissent. Baker's counsel is certainly free to urge the Supreme Court to abandon its holding in *Hollister*. But, absent some indication that our Supreme Court intends to change its views to adopt the position advocated by Justice Luckert in her dissent, we are duty-bound to apply the majority's holding. *Rodriguez*, 305 Kan. at 1144.

5. *Whether the issues are capable of repetition*

For his fifth and final contention in his supplemental brief, Baker's counsel is most succinct in his argument. In its entirety, his counsel alleges "[t]he issues raised in the instant case, whether the purported inventory search policies satisfy the Fourth

Amendment, are capable of repetition and raise concerns of public importance." In a final sentence, counsel notes that this is Baker's second appeal on exactly the same issue, citing *State v. Baker*, 306 Kan. 585, 395 P.3d 422 (2017).

At the outset, we observe that Baker's viewpoint, taken to its logical conclusion, would mean that virtually any scenario is "capable of repetition." Searches and seizures implicating the Fourth Amendment are legion in our courts and are often intensely litigated. Even narrowing the focus to searches pursuant to an inventory policy garners a significantly large number of appellate cases. But we are convinced that our Supreme Court in *Hollister* did not intend for this "repetition" exception to mootness treatment in the event of a criminal appellant's death to baptize every inventory search and seizure case for full appellate review.

Baker's issues turn on the particular actions of Lawrence police officers in interpreting and applying the Lawrence Police Department's inventory policy in seizing items from Baker and also the district court's conclusions that the jail inventory policy would have led to the inevitable discovery of the contraband. These are fact-sensitive issues peculiar to Baker's case. The clear lesson to be drawn from the *Hollister* decision is that only issues of compelling statewide interest and wide potential application merit full review when a criminal appellant is deceased. Even though the Fourth Amendment issues raised by Baker are potentially capable of repetition in some respects, we do not regard them as of such unique statewide significance that the public policy interest is served by fully addressing them in this appeal. In short, we disagree with the very brief contention of Baker's appellate counsel and decline to review Baker's issues under the "capable of repetition" exception to mootness under *Hollister*.

In conclusion, similarly to the panel in *Cada*, in Baker's case we will enforce the rule that "fact-laden issues that, at best, would result in reversal and remand for a new trial should be discarded on appeal as moot." 2016 WL 367799, at *1. We believe neither

13

of Baker's issues turns on a broad policy question or an important and unresolved point of law that could be easily defined and decided without reference to the factual record in this case. By applying *Hollister*, we believe the issues here are clearly moot following Baker's death.

Appeal dismissed.